OF THE

# 𝖘upreme 𝕮ourt of 𝖋lorida,

AT

## JANUARY TERM, 1856,

### HELD AT TALLAHASSEE.

THOMAS J. LINTON, APPELLANT, VS. DENHAM & PALMER
AND MINOR WALKER, APPELLEES.

1. The principle affirmed in the case of Carter vs. Bennett, et al, 6 Flor. R., 236, viz: that when all the Equities of the Bill are denied by the answer, it is not of course to dissolve the injunction ; the granting and continuing of injunctions rest in the discretion of the Court to be governed by the nature and circumstances of the case—cited and approved.
2. When the facts, circumstances and law of the case presented in the Bill and answer afford a strong presumption that the Complainant may be entitled to relief upon the final hearing, and in the meantime might suffer irremediable injury, the injunction should be continued to that period notwithstanding the general denial of the Equities of the Bill, in the answer.

This is an appeal from an interlocutory order of the Circuit Court, for Jefferson County, dissolving the injunction granted in this cause. The allegations of fact presented by the Bill and answer are fully set forth in the opinion of the Court.

*Archer & Papy* for Appellants.

*M. A. Long and W. S. Dilworth* for Appellees.

PEARSON. J., delivered the opinion of the Court.

This is an appeal from the Circuit Court sitting in Chancery for Jefferson County, for granting an order dissolving an injunction upon the coming in of the answers, which had been previously allowed in this case.

The case made by the bill is, that the defendant Minor Walker, on the 1st day of January, 1850, did, by his covenant under seal, amongst other things, hire, for the space of five years, fifteen negro slaves, therein named, to the complainant. In consideration whereof, the said complainant agreed to pay the said defendant Walker the sum of $6000, in five equal annual instalments of $1200 each, to become due respectively on the 1st day of January in the years 1851–2–3–4 and 5, for which several instalments the complainant executed his five several promissory notes to the said defendant Walker. And that, at the time of this transaction, Walker was and still is insolvent, and dependent mainly for the support and maintainance of himself and family upon the debt thus contracted in his favor. That the complainant made frequent advances to the said defendant Walker for necessaries, &c., the amount of which, consisting of many small items, were not endorsed by way of credit upon the said notes at the time they were made, by reason of the inconvenience of the same, and the confidence existing between the parties to the transaction, but that these advances were made with the express understanding that they should constitute off-sets in favor of the complainant, upon the settlement of said promissory notes, with interest at the rate of eight per cent. up to the maturity of such of the said notes as they might be applied

to, and that these advances, up to the filing of this bill, amounted to $1002.38, including the hire of the negro girl Ciller for the years 1852–3 and 4; who was one of the negroes mentioned and included in the original covenant of hiring between the said defendant Walker and complainant, and rehired by complainant to said defendant Walker, after deducting the said defendant's open account against complainant, a statement of which is filed and marked exhibit B. The bill further alleges that the greater part of these advances was made in the year 1853, and should have been applied to the extinguishment of the balance due upon the instalment falling due on the 1st of January, 1854—that the note for the instalment due at that time had been settled and taken up by complainant on the 1st of June, 1852, and a new note then given to the said defendant Walker for a balance of $431.85 of that instalment, payable at the period at which the said instalment would fall due—the 1st Jany. 1854. It is charged in the bill that this note remained in the hands of defendant Walker until it was over-due, and was then transferred by him to the defendants, Denham & Palmer, who were merchants, to secure a debt the said Walker owed them, regardless of the complainant's right to set off his advances to the said Walker against it. That complainant expostulated with the defendants Denham & Palmer, for having taken the said note, insisting that he had already paid it by his advances to the said Walker, and could make a successful defence if the same was put in suit. That the defendants, Denham & Palmer, knowing these facts, besought complainant to allow them to keep the said note for the security of their debt, while he, the complainant, could set off his advances to the said Walker against the last of said notes which would fall due on the 1st of

January, 1855, and that complainant, being on friendly terms with the said Denham & Palmer, consented to this arrangement for their security and protection, it being generally understood that the negroes in question were under mortgage to the Union Bank of Florida, that sundry judgments existed against said Walker, and he known to be insolvent. That at this time, in the store of Denham & Palmer, a rough estimate was made by William Denham, one of the firm of Denham & Palmer, of the amount of complainant's claim upon said Walker, with interest up to the maturity of the complainant's only remaining note, which would fall due on the 1st January, 1855, which original estimate is filed with the bill, marked exhibit C, and alleged to be in the hand-writing of said William Denham, and exhibits the amount of 848.50 dollars, including interest, as being due to complainant by defendant Walker at the maturity of said note on the 1st January, 1855, the said note being negotiable and made payable to said defendant Walker or order. That complainant then sought to have a settlement with the said Walker, but failed on account of Walker's inattention to business; but Walker being urged, finally handed the said note of $1200 to complainant, and directed him to make out his account and credit the amount upon the note. Complainant took the note and carried it home, but reflecting that Walker ought to be present and assist in the settlement, complainant declined placing any credit upon the said note until the said Walker should by himself, or through some competent friend, examine and satisfy himself of the correctness of complainant's account, and accordingly returned the note to said Walker. The bill further alleges that soon after these last occurrences, the defendant Walker delivered the said note to the defendants, Denham & Palmer, as collateral security for an in-

considerable store account which he owed them, and when questioned on the subject by complainant, showed him the receipt of the defendants, Denham & Palmer, for the said note, to be held as collateral security for the debt of him, the said Walker, declaring to complainant that the only object that he had in view was to appropriate the balance that might be due on said note after all complainant's proper credits had been given. But nevertheless the said defendants, Denham & Palmer, have sued complainant on said note, and combine, with the defendant Walker, in refusing to allow complainant any credit whatever upon the same.

That Darius Williams, one of the firm of Denham & Palmer, said to complainant that the said firm would not have traded for said note but for the fact that they had heard complainant say that he might be compelled by law to pay the same over again, provided the said defendant Walker should negotiate it before due.

To the truth of the foregoing narrative of facts, which are elaborately set forth in the bill, the defendants are minutely and circumstantially interrogated in twenty-three interrogatories appended thereto.

The answer of the defendant Walker, so far as the same is responsive to the bill, admits the covenant of hiring and the delivery of the negroes therein mentioned to complainant, and the re-hiring of the girl Ciller to him, the defendant Walker, the settlement with complainant, on the 1st June, 1852, and the execution by complainant of the note of 431.85 dollars, for the balance found due on the instalment for negro hire falling due on the 1st January, 1854. And the answer states that all or most of the items of complainant's account against defendant exhibited in his bill were deducted from the note settled on this occasion,

or from the said complainant's notes for previous instalments. That after this settlement, he, the defendant Walker, " may have" drawn some drafts for small amounts of money on complainant, but denies that it was understood that the same should constitute credits on either of the notes then held by defendant upon complainant, but that the same should be deducted from said defendant's account against complainant, (which the answer says is " positively set forth" in complainant's exhibit B,) and from the hire of the negro Drew. The answer then proceeds to dispute the accounts between the said defendant Walker and complainant, and asserts the said defendant's " belief" that complainant, on a fair and full settlement, would be indebted to him in " a large sum of money" over and above the said note of $1200. It further admits that the defendant Walker did, in the early part of the year 1853, transfer the note of $431.85 to the defendants Denham & Palmer, to whom he was indebted, and that at the maturity of said note, they allowed him the full amount of it to his credit. That on the 1st January, 1854, the defendant Walker was indebted to the defendants Denham & Palmer to the amount of about $350, and that in the early part of that year he transferred to them by delivery, the said note of complainant for $1200, due on the 1st of January, 1855.— But that soon after the delivering of said note to the said Denham & Palmer, they called his attention to the fact that it needed endorsement to complete the transfer, and then he endorsed it as they desired. That the defendant Walker was at the time of the said transfer of said note purchasing supplies of the defendants Denham & Palmer, but that he does not know to what extent his account had run at that time, but that the whole amount of said note was passed to his credit by them, at its maturity on the 1st of

January, 1855, and a small balance remaining in his favor was paid to his order. That at the time of the transfer of said note to the defendants Denham & Palmer, the defendant Walker told them he owed the complainant a small beef account which they must " deduct from said note," but that complainant refused to make out and receive the amount of said account. That the said note was transferred to the said Denham & Palmer absolutely, with the understanding that it should pay whatever amount the defendant Walker then owed them, and whatever amount his account might amount to during the year 1854, the balance, if any, to be paid over to said Walker in cash.

The answer of said defendant Walker further admits that he did take a receipt for the said note from the defendants Denham & Palmer, but that he does not know where it is nor remember the contents of it, but that its object was to show the amount of the credit to which he would be entitled in consideration of it with the said defendants Denham & Palmer. It states that the said defendant Walker " does not recollect" and denies that he ever gave the said note to complainant for the purpose of having any credits placed upon it, and that there was no understanding that complainant's advances should be deducted from said notes, although he admits that previous to the settlement of the 1st June, 1852, he had given orders for certain debts he owed, on complainant, (which he does not recollect,) and that they were included in that settlement and deducted from the note for the instalment falling due on the 1st January, 1854.

The defendants, Denham, Palmer & Williams, who constitute the firm of Denham & Palmer, answer and say, they admit the hiring of the negroes as set forth in the bill, but know nothing of any understanding between complainant

and defendant Walker that the advances made by the former should constitute credits on his notes for negro hire held by the latter, nor can they say whether the defendant Walker is or is not insolvent, though they have heard that outstanding judgments and executions exist against him. They have no means of ascertaining the correctness of complainant's account against the defendant Walker, but they admit that exhibit C, containing a statement of that account, was made in their store and is in the handwriting of William Denham, one of the partners in their firm. They admit the transfer of the note of $431.85 to them by defendant Walker on the 28th January, 1853, and that the same was charged to complainant and subsequently settled by him without complaint or objection. That at the time of the transfer of said note, defendant Walker was indebted to them in the sum of $339.40 on account for the year 1852, and that on a further settlement up to the 1st of January, 1854, the said Walker remained in their debt in the sum of $361.60. They know not for what purpose the note of $431.85 was given, and deny that they solicited the complainant to waive his claim to set off his account upon defendant Walker against the said note and reserve it to be credited upon the note of $1200 still in the hands of said Walker. This last note of $1200 due the 1st day of January, 1855, these defendants say was transferred to them by delivery in the early part of the year 1854, but that afterwards discovering that the said note was payable to order, they called the attention of defendant Walker to this fact and he then endorsed it. The consideration of the transfer of said note was the defendant's store account for the year 1853, amounting to $364.60, and the account which he was then running up for the year 1854, the amount of which, at the time of the transfer of said note, these defendants do

Linton vs. Denham & Palmer and Walker—Opinion of Court.

not know. But it was agreed that at the maturity of the said note on the 1st day of January, 1855, their whole account should be taken out of the note, and the balance paid to said Walker. This balance they allege amounted to $55.44 and was paid to the order of said Walker. They deny that they had any conversation with complainant in relation to the said note of $1200 until after its transfer to them, but admit that at that time the defendant Walker informed them that defendant had a small beef account which was to be paid out of the said note by them. That they informed the complainant of this, but that he refused to render in the account or receive the amount of it, and that they settled with the defendant Walker, irrespective of the beef account. They allege that they brought suit against the complainant on the said note at his own request, and recovered judgment on the same in Jefferson Circuit Court, on the 12th November, 1855, for the sum of $1262.42 and costs.

After the transfer of the said note of $1200 to them, these defendants say they did have a conversation with the complainant, in which they offered to pay him any balance that might be found due him on settlement with the defendant Walker, provided the said Walker was willing, but that the said Walker refused to accede to the arrangement. And they admit that they did give the said Walker a receipt for said note, which is not in their possession, nor do they know where it is. They do not remember the language of the receipt, but its object was simply to show that the said Walker was entitled to a credit for the amount of the note. They allege that they have no recollection of exhibiting the said note to complainant until after it was due and presented for payment, nor did they ever hear that complainant claimed any equities against said note until the filing of his bill. They deny all knowledge of any ad-

542        SUPREME COURT,

Linton vs. Denham & Palmer and Walker—Opinion of Court.

vances made by complainant to defendant Walker on the notes held by said Walker against him, though they have heard complainant say that he had paid debts for Walker, and they have no recollection of any conversation with complainant in relation to his off-sets against said note, and deny that the said Darius Williams ever said to complainant that they would not have traded for the said note but for having heard the complainant say that he might be compelled to pay the note again, should it be traded by said Walker.

All the defendants deny generally all fraud, combination, &c. There are some other matters set up by way of defence in the answer, but not being in response to the charges and interrogatories of the bill, they are not proper to be considered upon the interlocutory question now presented. It was held by this Court, in the late case of Young and Bryan vs. McCormick, 6 Fla. Rep., 368, that " where a new equity is set up by the answer to avoid that set up by the bill, the Court will not regard it upon motion ;" and in the same case the Court declared its purpose, "on a motion for an injunction, not to commit itself to points or questions that may arise at the final hearing." We are not to be considered, therefore, as determining any thing in this case definitely, except the question of injunction. That is in fact all that is before us. It will be time enough to consider the merits when they shall have been adjudicated in the Court below, and the decree of that Court brought before us upon appeal.

That the complainant would be entitled to relief, upon the case presented by his bill, is unquestionable ; and upon the extent to which that case is modified by the answers of the defendants, will depend the determination of the question under consideration. Upon a motion to dis-

solve an injunction after the coming in of the answer, the defendant is the actor, and the Court will presume against him when he does not answer fully and circumstantially. Judge Story, in his Equity Pleading, sec. 852, says : "An answer must state facts and not arguments. It is not sufficient that it contains a general denial of all the matters charged, but there must be an answer to the sifting inquiries upon the general subject." Tried by these rules, what is the effect of the answers in this case ? The principal point—the insolvency of the defendant Walker—is wholly evaded by him in his answer, while the other defendants say they do not know whether he is insolvent or not. The rule in Chancery is that whatever is well pleaded and not denied, is admitted. The insolvency is therefore established ; and with this knowledge on the part of Denham & Palmer, if they were also acquainted with the course of business between complainant and Walker, and the fact that complainant had made considerable advances to Walker in the way of payment for the 1200 dollar note, for which they traded, then equity would compel them to admit the set-off claimed by complainant against the note. It is true that they in general terms deny this knowledge, but their admissions render it manifest that they should have been better informed. Walker was their customer, and had settled his account with them, by their own admission, the previous year, by passing to them the complainant's note for $431.85, upon which occasion Denham, one of the firm, made out a statement of the complainant's advances to Walker on the note which Walker afterwards assigned to them. And it should be observed that the interest is calculated carefully upon each item of this account up to the maturity of that note, thus connecting this account and note together under the very eye of the de-

fendant Denham. Defendant Walker, too, substantially admits that the admission of complainant's account as off-sets at former settlements, had been the practice between him and complainant. It would seem that a man might be expected to have some knowledge of an important business matter which he acknowledges to be in his own hand-writing. Nor is the positive oath of the complainant, that the note in question was transferred as collateral security only by Walker to Denham & Palmer, and that he the complainant read their receipt for it to that effect, fully met by the answers. The defendants all confess that the note was not endorsed when first delivered to Denham & Palmer. The receipt is not produced or accounted for, and the defendants answer with a remarkable coincidence of expression that they do not know where it is, nor remember the contents, but its object only. It is admitted that when the note was transferred to Denham & Palmer, they were informed that he owed complainant a beef account, which must be paid out of it, which they actually offered to do, and further proposed to pay complainant his debt against Walker, provided Walker would consent. Walker refused and stated that complainant owed him a "large sum of money" irrespective of the note, while in his own answer he confesses that at the time of the transfer of the note, he directed Denham & Palmer to pay his beef bill out of it. Walker being insolvent, Denham & Palmer had a strong motive to secure the note to protect themselves in their debt, and could hold the excess in trust for Walker. All these circumstances taken in connection go far to raise the presumption that Denham & Palmer should have known the business relations affecting the note, between complainant and Walker.

In Carter vs. Bennett, et al., Fla. Rep. p 236, this Court cites with approbation, Chancellor Kent in Robertson vs.

Anderson, 2 John. Ch. R. where he says, "That even where all the equity of the bill is denied by the answer, it is not of course to dissolve the injunction, as the granting and continuing the injunction rests always in the sound discretion of the Court, to be governed by the nature of the case." In this case the complainant's equity to have his payments or advances set off against a debt due to an insolvent creditor, where his own debt to such a creditor must be presumed to have been the foundation upon which he trusted such a creditor, is very clear. Story's Equity Jurisprudence, page 890, *et sequiter*. Is this equity lost by reason of the insolvent assigning a negotiable instrument to a third party who had notice of the relation in which the parties stood to each other? Certainly not. The hire of the negro Ciller to defendant Walker by complainant, she being one of those included in the original covenant, and her hire being part of the consideration of the note in question—the taxes and physician's bills, all of which go to make up the complainant's claim of set off, are connected directly with the negroes and the note given for their hire. The case of Kilcrease vs. White, 6 Fla. Rep. 45, has been cited to us to show that under such circumstances the set off would be allowed, even at law ; and we have been referred to the case of Rosa vs. Brotherson, 10 Wend. 85, to show that "where a creditor receives the transfer of a negotiable note in payment of a *precedent debt*, he takes it, although transferred to him before maturity, *subject to all equities* existing between the original parties." Now the note in question was transferred to pay a precedent debt to Denham & Palmer by their own confession, while they held the surplus to secure another debt not then contracted. But we would avoid entering upon the law and merits of the case, in its present stage, further than to express our opinion, that

where the facts, circumstances and law of the case, as presented in the bill and answer, afford a strong presumption that the complainant may be entitled to relief upon a final hearing, and in the meantime might suffer irremediable injury, the injunction should be continued to that period, notwithstanding the general denial of the equities of the bill in the answer.

Let the order of the Circuit Court dissolving the injunction be reversed, and the case remanded for further proceedings.