W. R. GARY AND ALEX SLOAN, *Plaintiffs in Error*, v. KISSIMMEE RIVER CATTLE COMPANY, A CORPORATION, WILLIAM COLLINS AND H. H. HANCOCK, *Defendants in Error*.

Opinion Filed March 2, 1923.

1. While the prime duty of county bond trustees having a fund in their custody is to secure its safety by exercising all due care and diligence in executing authority conferred, yet it is their duty to augment as well as to conserve the fund when augmentation is contemplated by the trust; and any act or default on the part of the trustees that prevents a due conservation and enhancement of the fund may be cause for removal within a proper exercise of the removing power.

2. Trustees should not be permitted to directly or indirectly gain pecuniary profit by the use of trust funds or by diverting or misdirecting the use or custody of trust funds.

3. If because of carelessness or inefficiency or design resulting in the misuse or abuse of non-use or depreciation in or loss of profits in the use of trust funds, the fund is not enhanced or augmented or conserved as it reasonably should be under the authority conferred upon the trustees, such delict, inefficiency

or design in mismanaging the funds may be cause for removal of the trustees in order that the fund may be conserved, enhanced and administered as it was intended to be executed.

4. In performing their trust functions the county bond trustees have a discretion within limits that may be stated in the terms of the trust or implied by law from the nature of the trust and the circumstances of its execution, the conservation of the fund to serve the beneficiaries being the prime consideration.

5. The courts will not in general interfere with the exercise by the county bond trustees of the discretion accorded to them by the nature of the trust, where no unlawful act or excess or abuse of discretion or misconduct or negligence is shown, that results or probably will result in loss or detriment to the fund or its beneficiaries.

6. The law contemplates that trustees shall perform their trust functions with absolute fidelity and with efficinecy and promptness; and in reviewing their conduct as such trustees, the courts should require the contemplation of the law to be effectuated; but the removal of trustees should be predicated upon a clear showing of delict or abuse or wrong doing in executing the trust.

7. While the cashier or other officer of a bank may not be disqualified to serve as a county bond trustee, the duties of such trustee may seriously conflict with the duties and interests of the bank official; and when under competition or other circumstances money of the trust is to be deposited in the bank of which a trustee is an officer, the impropriety of the cashier or other officer of the bank becoming or continuing as a trustee is manifest.

8. What constitutes "cause" for which under the statute county bond trustees may be removed by a Circuit Judge must, in the absence of express provisions of law, be determined by a due consideration of the facts and circumstances of each case viewed in the light of the standards of fidelity and efficiency

that in contemplation of law should be observed by such trustees in performing the functions assigned to them by the statute.

9. The essential duties of the county bond trustees are to receive, conserve and disburse the trust funds on proper warrants duly drawn by the board of county commissioners, the county commissioners being responsible for their own official acts and the bond trustees being liable for their own wrongful acts or negligence in not conserving and in disbursing funds committed to them.

10. While the course of conduct of the county bond trustees in this case in managing the funds, making reports, etc., is in some respects not entitled to judicial approval, and does not measure up to the requisite standards of fiduciary duty, yet in view of the heretofore undetermined state of the law by which they should be governed, it does not clearly appear that there has been such an intentional or negligent mismanagement of the funds by the respondent trustees as to afford, within the purview of the statute, a sufficient "cause" for their removal.

A Writ of Error to the Circuit Court for Okeechobee County; E. C. Davis, Judge.

Reversed.

*E. J. L'Engle, P. L. Gaskins, F. L. Hemmings* and *Parker & Thomas*, for Plaintiffs in Error;

*Blackwell, Donnell & McCracken* and *R. E. Hamrick*, for Defendants in Error.

WHITFIELD, J.—A petition was filed in the Circuit Court by taxpayers against two of the bond trustees of Okeechobee County, the other trustees being one of the petitioners, in which it is in effect alleged that $300,000.00

of 6% bonds were issued by Okeechobee County for the purpose of constructing paved, macadamized and other hard surfaced highways in said county; that the respondents and one other were appointed trustees of said bonds; that on or about July 7th, 1919, the bonds were sold, and that "there was turned over to the said bond trustees the money realized from said sale in the amount of Three Hundred Nine Thousand Five Hundred Ten Dollars ($309,510.00) and accrued interest in the sum of Eleven Hundred Forty-nine and 90/100 Dollars, and it became the duty of said bond trustees to faithfully discharge the trust confided in them and to pay over and duly account for all sums of money placed in their hands by virtue of such trust; and among the duties imposed on said trustees by virtue of the trust confided in them are and were at that time, and at all times have been to distribute the money realized from the sale of said bonds for the purposes for which the bonds were sold, and for no other purposes, and to keep the money in a safe depository and to collect for the deposit of said money the highest rate of interest commensurate to sound business practice, and in all ways to serve the best interests of the taxpayers in said county; that less than two per cent. interest per annum has been realized and collected on said money, if the whole time for which it has been kept be considered, and at no time has more than three per cent. interest per annum been collected; whereas, the said money could have been placed and kept in banks thoroughly solvent, responsible and able to pay the same at a rate of interest of four per cent. per annum; and since the first day of January, A. D. 1921, there has been a bank in Okeechobee County solvent, responsible and able to pay the said money, willing to keep said money and pay therefor four per cent. interest per annum; and by so placing the same at such interest the

said money realized from the sale of said bonds would have
earned for the use and credit of said county large sums of
money in excess of the amount actually earned under the
management and control of the said trustees; that the said
W. R. Gary and Alex Sloan have, without consulting the
other member of the bond trustees, allowed the funds
realized from the said sale of said bonds to be expended
for illegal and unlawful purposes; that large sums of
money have been expended on roads not designated in or
allowable under the resolution calling for the election for
the issuance of said bonds; and large sums of money have
been expended  upon roads upon which it is unlawful to
spend the said funds; and other large sums of money have
been expended for matters entirely foreign to road work
or road construction for which said bonds were issued;
that the said trustees wholly disregarding their duty in
the premises and unmindful of the interest of the tax-
payers of said county and evincing a motive of selfishness
and working in the interest of individuals and corpora-
tions, the said trustees did not invest any portion of the
said sums of money so collected from the said Tax Collec-
tor in the bonds aforesaid, nor did they invest any portion
of said sums of money in bonds of the United States, the
State, a County or a Municipality bearing interest, nor
did they deposit the said sum in the Savings Department
of any National or State Bank of the State of Florida, or
any savings bank organized and existing under the laws
of the State of Florida at a prevailing rate of interest; but
on the contrary held all the said sums in the Bank of
Okeechobee and received therefor no interest at all, or a
much smaller rate than the prevailing rate; that the said
Alex Sloan has since his incumbency in the office of trus-
tee as aforesaid, connived with the said W. R. Gary in all
of the illegal acts above set out in this petition and has

refused at all times to act with the chairman of said board
in performing the duties required of the said Bond Trus-
tees by law, and by such conniving with the said W. R.
Gary and working against the will of the said chairman
and against the interest of the taxpayers and contrary to
the law, the said Alex Sloan and W. R. Gary are unfit and
incompetent to be trustees; that the said W. R. Gary is
cashier of the Bank of Okeechobee, located in the City
of Okeechobee, Florida, and he has at all times used his
influence and power to keep the funds realized from the
sale of said bonds deposited in his bank to the detriment
of the taxpayers and to the disregard of all other banks
and the interest of the people of Okeechobee County; that
his purpose has been to have said Bank of Okeechobee real-
ize large sums of money from the use of the said bond
money and to diregard his duties and obligations as a
trustee of the said funds; that by reason of the foregoing
allegations these petitioners allege that the said W. R.
Gary and the said Alex Sloan are inefficient and incom-
petent and unfit to be trustees of the funds realized from
the sale of the aforesaid bonds and that said allegations
show that the said W. R. Gary and the said Alex Sloan
should be removed by this Honorable Court for cause and
that the said funds should be entrusted to trustees who
are disinterested and efficient and who will manage the
funds for the advantage of the taxpayers of the said
county for the purposes for which the bonds were voted
and not for the interest of private individuals and corpor-
ations.  Wherefore, your petitioners respectfully pray that
this court enter an order removing said W. R. Gary and
Alex Sloan as Trustees of the County Bonds of Okeechobee
County, Florida; and to issue an order commanding and
requiring the said W. R. Gary and Alex Sloan to appear
and be before this Honorable Court, at a time and place

to be therein named, and to show cause why they should not be removed.''

By answer the respondents aver ''that at the time of said deposit and for a long time thereafter it was uncertain as to how long said funds would remain on deposit without being expended for road purposes, and for that reason the Bank of Okeechobee did not pay more than two per cent. on daily balances; that the Bank of Okeechobee paid two per cent. on daily balances upon the proceeds of said bond issue remaining in said bank until about January 1st, 1921; that on and after said date the Bank of Okeechobee increased the rate of interest on said funds to three per cent. per annum on daily balances, which is the present rate of interest being paid;'' ''that it might have been possible to have obtained four per cent. or even a larger rate of interest upon said funds from borrowers needing money, or outside banks, but these trustees feeling that they were entrusted with the safe keeping of said deposit believed that it was to the best interest of Okeechobee County and in keeping with their duties as trustees that said funds be deposited within a bank located in the County of Okeechobee, of whose responsibility they were personally assured;'' ''that they have paid out the monies in their custody from the sale of said bonds only upon the written orders of the Board of County Commissioners of Okeechobee County, Florida; that it is not the duty of these trustees to pass upon the legality or illegality of said orders of said Board of County Commissioners, but that the responsibility therefor rests entirely upon the said Board of County Commissioners;'' ''that there never has been any surplus on said interest and sinking fund for investment in securities, or any amount large enough to obtain any interest when deposited in the bank;'' that said interest and sinking fund as collected was deposited in

the Bank of Okeechobee and that said Bank of Okeechobee has loaned from time time the necessary amounts to meet the deficiency for payment of interest and that said Bank of Okeechobee has never charged any interest on said loans.

Testimony was taken by the Circuit Judge and on final hearing the two trustees were removed. A new trial was denied, and the defendants took writ of error.

The Constitution provides that "the Circuit Court shall have * original jurisdiction of" stated matters "and of such other matters as the legislature may provide." Sec. 11, Art. V. And that "the Supreme Court shall have appellate jurisdiction of all cases at law and in equity originating in Circuits Courts." Sec. 5, Art. V.

The statutes of the State provide for the issue of bonds by the county commissioners of a county "for the purpose of constructing paved, macadamized, or other hardsurfaced highways;" for the appointment, by resolution of the board of county commissioners, to be recorded in the minutes, of "a financial committee of three persons who shall be resident free holders of the county, to be styled trustees of county bonds, who shall each give bond running to the chairman of the board of county commissioners and his sucessors in office, with sufficient securities, in such sums as may be required by the county commissioners, conditioned that the said trustees shall faithfully discharge the trust confided to him, and shall pay over. and duly account for all such sums of money as may come into his hands by virtue of such trust, which said bonds shall be approved as to the form and the sufficiency of sureties by the board of county commissioners; and the county commissioners may, from time to time, as circumstances may require, demand additional security from any

such trustees; that "the proceeds of all bonds sold for money shall be paid over to the county trustees, to be distributed by them for the purposes for which such bonds were sold, and for no other purposes;" and that "all money collected to pay the interest, or for a sinking fund of said bonded debt, shall be paid over by the tax collector or other person receiving the same on account of taxes collected or property sold therefor to the said trustees, and the said trustees are required to pay out of the moneys so received the interest of said county bonds, and to invest the residue in the bonds aforesaid, or if the said bonds cannot be had at par or at such premium as to said trustees may seem reasonable and just, then such residue may be invested in United States, State, county or municipal bonds bearing interest; or in the event such bonds cannot be acquired to advantage, such funds shall be deposited in the savings department of National banks or State banks of the State of Florida, or savings banks organized and existing under the laws of this State, at the prevailing rate of interest, to be held as an accumulating fund for the ultimate redemption of said county bonds; and that the said trustees shall annually on such day as may be required by the board of county commissioners render a report to the said board, in which they shall state the amounts of money received, and for what purposes and from what sources, severally, and when received, and where and how the same has been invested, and enumerating the kind and amount of securities held therefor, describing the same separately, and such other matters as may be required by the board in order to a full understanding; which said report shall be published at length by order of the board; and that "the said trustees, or either of them, may resign at any time by a communication in writing to the board of county commissioners, and any number of said trustees

may be removed for cause by the judge of the Circuit Court of the circuit in which the county is situated, upon petition signed by any bondholder or tax payer, setting forth the cause of complaint; but no trustees shall be removed without notice, and an opportunity to be publicly heard, unless it appears that the accused trustee has absented himself so that notice could not be served. Secs. 1531 to 1547, Rev. Gen. Stats., 1920.

The provisions of the statute relating to the investment or deposit of tax money collected for interest and sinking fund purposes, do not in terms apply to money received from the sale of bonds. And while Sections 1558 *et seq.* Revised General Statutes of 1920 do not expressly apply to funds legally held by county bond trustees, yet the general principles of law require that county funds held by such trustees shall be placed where they will be safe and where such placing will result in the greatest benefit to the fund by interest payments on deposits, provided the safety and availability of the fund be first secured.

The policy of the statutes regulating deposits of State and county funds should be a guide to the county bond trustees in safeguarding and disbursing the trust funds in their custody.

In faithfully performing their duty to safely keep and to obtain a proper interest on funds in their custody, the trustees may not be required to send the funds beyond the county as interest bearing deposits in banks within the State or elsewhere if the same safety and return may be obtained in the county; but if the facilities for safety and interest payments that the trustees should demand are not available in the county, safety of deposit and reasonable interest returns should be sought in other counties of the State and if need be in other States, the safety of the funds

and the highest interest payments consistent with the safety of the funds being the first mandatory consideration that should control the trustees in performing their functions, and guide the courts in reviewing the acts of the trustees.

While the prime duty of county bond trustees having a fund in their custody is to secure its safety by exercising all due care and diligence in executing authority conferred, yet it is their duty to augment as well as to conserve the fund when augmentation is contemplated by the trust; and any act or default on the part of the trustees that prevents a due conservation and enhancement of the fund may be cause for removal within a proper exercise of the removing power.  Trustees should not be permitted to directly or indirectly gain pecuniary profit by the use of trust funds or by diverting or misdirecting the use or custody of trust funds. If because of carelessness or inefficiency or design resulting in the misuse or abuse or non-use or depreciation in or loss of profits in the use of trust funds, the fund is not enhanced or augmented or conserved as it reasonably should be under the authority conferred upon the trustees, such delict, inefficiency or design in mismanaging the funds may be cause for removal of the trustees in order that the fund may be conserved, enhanced and administered as it was intended to be executed. Necessarily in performing their trust functions the trustees have a discretion within limits that may be stated in the terms of the trust or implied by law from the nature of the trust and the circumstances of its execution, the conservation of the fund to serve the beneficiaries being the prime consideration; and the courts will not in general interfere with the exercise by the trustees of the discretion accorded to them by the nature of the trust, where no unlawful act or excesses or abuses of discretion or miscon-

duct or negligence is shown, that results or probably will result in loss or detriment to the fund or its beneficiaries. See Kay v. Bostwick, 83 Fla. 308, 91 South. Rep. 112.

The law contemplates that the trustees shall perform their trust functions with absolute fidelity and with efficiency and promptness; and in reviewing their conduct as such trustees, the court should require the contemplation of the law to be effectuated; but the removal of trustees should be predicated upon a clear showing of delict or abuse or wrong doing in executing the trust.

While the cashier or other officer of a bank may not be disqualified to serve as a county bond trustee, the duties of such a trustee may seriously conflict with the duties and interest of the bank official; and when under competition or other circumstances money of the trust is to be deposited in the bank of which a trustee is an officer, the impropriety of the cashier or other officer of the bank becoming or continuing as a trustees is manifest.

Assuming that county bond trustees under the statute are not among the county officers who are required by Section 27, Article III of the Constitution to be elected by the people or appointed by the Governor, (Suburban Inv. Co. v. Hyde, 61 Fla. 809, text 814, 55 South. Rep. 76) they are not now so elected or appoined as to make them subject to suspension by the Governor under Section 15, Article IV of the Constitution (In re Opinion to Governor, 78 Fla. 9, 82 South. Rep. 608) and for the purpose of this case, the statute authorizing the Circuit Judge to remove such trustees for cause will be applied.

What constitutes "cause" for which under the statute county bond trustees may be removed by a Circuit Judge must, in the absence of express provisions of law, be de-

termined by a due consideration of the facts and circumstances of each case viewed in the light of the standards of fidelity and efficiency that in contemplation of the law should be observed by such trustees in performing the functions assigned to them by the statute.

The fund held by the county bond trustees is to be disbursed by them upon warrants duly drawn by the board of county commissioners, and unless the trustees participate in wrongdoing in drawing or paying warrants or are negligent in the discharge of their duty to preserve and conserve and properly execute the trust, the trustees are not in general liable for errors of judgment by the county commissioners in drawing warrants on the trust fund for claims and expenses that should not be paid from such trust fund. The essential duties of the county bond trustees are to receive, conserve and disburse the trust funds on proper warrants duly drawn by the board of county commissioners, the county commissioners being responsible for their own official acts and the bond trustees being liable for their own wrongful acts or negligence in not conserving and in disbursing funds committed to them. See Suburban Inv. Co. v. Hyde, 61 Fla. 809, 55 South. Rep. 76.

While the course of conduct of the trustees in this case, in managing the funds, making reports, &c., is in some respects not entitled to judicial approval, and does not measure up to the requisite standards of fiduciary duty, yet in view of the heretofore undetermined state of the law by which they should be governed, it does not clearly appear that there has been such an intentional or negligent mismanagement of the fund by the respondent trustees as to afford, within the purview of the statute, a sufficient "cause" for their removal.

The fact that the bank of which one of the respondent trustees is cashier was given as deposits all of the very large proceeds from the sale of bonds, and that only 2% interest was paid on such deposits for more than a year, and that only 3% has been paid after that period, do not meet the required standard of fidelity and efficiency in managing the trust fund; but in view of the consideration that when the fund was paid to the trustees and for more than a year thereafter there was no other bank in the county, and that it does not clearly appear on this record that all pertinent circumstances being considered the whole or half of the deposits should have been transferred to the competing bank under the offer made as to safety of deposits and interest returns, or that the funds should have been sent to another county in the State for deposit at a greater rate of interest than was being paid by the original bank of deposit, particularly when the law contemplates that the proceeds of bond sales shall be speedily used for the purposes authorized and it is not shown that all or the greater part of the fund would probably not be used for a long period of time so as to enable a time deposits to be made at greater interest rates.

It appears that no interest was paid on deposits of interest and sinking fund moneys because at some periods the bank advanced without interest to meet the bond coupon interest payments when collections of taxes were not at the time sufficient to meet the semi-annual interest payments on the bonds. This course of dealing is not to be approved, but the circumstances here do not clearly establish a cause for removal of the trustees. Their future course will be judged by proper standards of fidelity and efficiency, the rules of law applicable in such cases being now promulgated for the control of the trustees and the

guidance of the courts in reviewing the fiduciary conduct of the trustees.

This case discloses the unwisdom of the laws that permit the issue of large amounts of county bonds bearing a high rate of interest, when the bonds are sold in large quantities long before the money can be properly used for the purpose designed, making it necessary for the trustees, whose bonds may be wholly inadequate as protection to the county, to hold for long periods large sums derived from the proceeds of bonds sold, on which bonds the county pays high rates of interest while the money held for future use, even if it is safely kept, produces very little interest money and is a constant temptation to extravagance and wastefulness that burden the taxpayers and demoralize the business processes of the county.

Reversed.

TAYLOR, C. J., AND ELLIS, BROWNE AND WEST, J. J., concur.