FIRST NATIONAL BANK OF GAINESVILLE, a National Banking Association, and LEE GRAHAM, W. S. GRAHAM, MAUDE GRAHAM HAILE, *et al.*, as heirs at law of James M. Graham, deceased, v. C. D. MASSEY and ORANGE LAKE CORPORATION.

182 So. 187.

Opinion Filed October 18, 1937.

Adhered to on Rehearing June 18, 1938.

114

*Hampton, Jordan & Lazonby* and *J. V. Walton,* for Appellants;

*T. S. Trantham* and *Spessard L. Holland,* for Appellees.

BUFORD, J.—The appeal brings for review order denying application for temporary injunction and granting motion to dismiss bill of complaint.

On September 8th, 1936, bill of complaint was filed wherein it was prayed:

"That the court will take jurisdiction of the parties and in the subject matter of this cause, and will issue a temporary restraining order, restraining and enjoining the Orange Lake Corporation any other or further moneys to the said C. D. Massey or Como D. Massey, and the said C. D. Massey or Como D. Massey will be restrained and enjoined from collecting or attempting to collect any other or further moneys from the Orange Lake Corporation until final hearing of this cause, and that upon final hearing, the said injunction to be made perpetual; that an accounting may be had and taken by this Honorable Court to ascertain the full amount collected by the said C. D. Massey; the amount due by the said C. D. Massey to your orators; that upon final hearing, the Orange Lake Corporation shall be ordered to pay said amount so found to be due, to your orators, and after the payment to your orators, the amount so found to be due, the balance, if any, shall be paid to whoever equity finds entitled thereto;

"That your orator may have such other and further relief as to this equity may seem meet and the justice of this case may warrant."

Massey filed his answer on September 22nd, 1936, in which he incorporated motion to dismiss. Affidavits were submitted pro and con.

Having considered the bill, answer and the affidavits, the Chancellor entered an order denying temporary injunction and dismissing the bill of complaint, allowing complainants time in which to amend the bill of complaint.

The complainants appealed from the order dismissing bill of complaint.

The bill of complaint alleges in effect that on December 30, 1922, the First National Bank of Gainesville held two judgments or deficiency decrees against Charles W. White and others, and that Lee Graham, W. S. Graham, Maude Graham Haile and Henrietta M. Graham in their representative capacity as Executors of the Estate of James M. Graham, deceased, owned and held a money judgment against Charles W. White; that these judgments total $15,492.64; that under date of January 22, 1923, the owners of the judgments above named transferred and assigned said judgments to C. D. Massey (the assignment is attached to and made a part of the bill of complaint) ; and that coincident with the assignment of the judgments, which assignments were in conventional form and properly executed, and in consideration of such assignments, C. D. Massey, First National Bank of Gainesville and the Grahams entered into a written agreement pursuant to an understanding between Massey and Hampton & Hampton as attorneys for the judgment creditors. The understanding between Massey and the attorneys was in the following language:

"Mr. C. D. Massey,          "December 30, 1922.
"Ocala, Fla.
"Dear Sir:

"*Re*: Judgments — First National Bank of Gainesville v. White, *et al.*, and James M. Graham v. White, *et al.*

"Referring again to our negotiations touching this matter, am authorized to say that the Bank will accept for its two judgments four thousand ($4000.00) Dollars.

"2. The Executors of James M. Graham, deceased, will accept for their judgments two thousand ($2000.00) Dollars.

"3. The time limitation for the payment by you of the purchase price for these Two Judgments is two (2) years from this date. If, however, you shall have instituted any litigation touching the enforcement of these Judgments within the two years limitation in good faith and are diligently prosecuting such litigation, the time will be extended until said litigation shall have terminated, provided, however, that you shall prosecute the same with reasonable diligence. It being definitely and distinctly understood that should you realize any sum or sums upon either of the judgments recited, such or sums are to paid pro rata to the said Bank and the Executors of the James M. Graham estate, whether you realize enough to pay the purchase price above recited or not. But when you shall have paid the amounts agreed upon, then any sum or sums realized by you in excess thereof to be retained by you.

"4. You to have the privilege of utilizing these judgments and Executions, of course under the direction and control of the Attorneys of Record for the Bank and for the Graham Estate (which of course is myself or our firm); we to cooperate with your counsel in the enforcement of the Judgments and Executions, but you not to pay any Fee to us or to either or us. Therefore, we are not to be called upon to actively engage in the litigation, but only to cooperate with your counsel.

"5. The said Judgments and Executions will be duly assigned to you upon your executing a Contract, the form of which has been agreed upon, and which is enclosed with this letter. It being distinctly understood and agreed that all moneys collected upon these Judgments and Executions shall be paid to Hampton & Hampton, Attorneys of Record,

to be placed by them in the First National Bank of Gainesville until the amounts agreed to be paid to the said Bank and to the said Estate of James M. Graham, deceased, shall have been paid; and the title to all property acquired by sale or otherwise under these Judgments and Executions shall be placed in the name of W. W. Hampton, Trustee, until the amounts agreed upon above shall have been fully paid

"6. When the Grahams Judgments shall have been paid as above set forth, the Executors of the Graham estate will make a Quit Claim Deed to you for the property acquired under the Master's Deed by E. H. Martin, Special Master, recited in your memoranda to me.

"7. When the amounts set forth shall have been paid, you to have the full benefit of the interest in, or agreement which we hold under the foreclosure proceedings in Duval County of Hart v. White.

"8. All costs and expenses pertaining to the continuation of this litigation shall be paid by you—you to guarantee to protect the Bank and the Graham Estate against any costs, damage or loss of any kind by reason of such litigation; and of course to pay any expenses that our firm may have in cooperating with your counsel in the enforcement of the litigation.

"9. Should this Contract be forfeited and C. D. Massey fail to recover anything upon the Judgments, or should fail to prosecute the Judgments in accordance herewith, if requested, he shall reassign the Judgments and Executions to the original Plaintiff. If this is satisfactory you may proceed with the matter. But there must be a formal acceptance of this in writing by you before you proceed."

The agreement entered into between the Judgment Creditors and Massey was as follows:

"THIS AGREEMENT, Made this 2 day of January, A. D. 1923, between Comer D. Massey of Marion County, Flor-

ida, party of the first part, and The First National Bank of Gainesville, a corporation, and Lee Graham, W. S. Graham, Maude Graham Haile, and Henrietta M. Graham, as Executors of the Estate of James M. Graham, deceased, parties of the second part, WITNESSETH:

"Whereas the parties of the second part have this day transferred, assigned and sold to the party of the first part certain Judgments against Charles W. White, *et als.,* which are more particularly described in an Assignment of Judgments executed by the said parties of the second part to the party of the first part of even date with this Agreement; and whereas the party of the first part to these presents desires to make assurance to the parties of the second part of the payment of the purchase price of said Judgments so assigned;

"Now THEREFORE, it is agreed and undertaken by the party of the first part that payment of the purchase price of the said Judgments will be made by him according to the terms and conditions set forth in a letter bearing date December 30th, 1922, addressed to C. D. Massey, Ocala, Fla., and signed by Hampton & Hampton, as Attorneys for the parties of the second part to these presents.

"And the party of the first part further agrees that all moneys which may be realized or collected by him under and by virtue of the said Judgments shall be paid over to Messrs. Hampton & Hampton of Gainesville, Florida, the Attorneys for the parties of the second part, to apply on the purchase price of said Judgments, until the said purchase price is fully paid. And further agrees that the title to any and all property, real or personal, which may be acquired under or by virtue of the said Judgments, shall be held in the name of W. W. Hampton, as Trustee, until such time as the purchase price of the said Judgments agreed upon shall have been paid.

"And It Is Further Agreed That upon completion of the payment of the purchase price of said Judgments, the title to any and all property which shall have been acquired in trust as aforesaid, shall be conveyed by the Trustee to the party of the first part to these presents, or his nominee.

"Should the said Comer D. Massey fail to realize on the said Judgments and Executions, or neglect to institute and prosecute the proposed litigation, he shall reassign said Judgments and Executions to the Plaintiffs therein, if so requested by the Plaintiffs in execution.

"In Witness Whereof, the said parties hereto, and each of them, have hereunto set their hands and affixed their seals on the day and year first above written."

At the time the assignments were made and this Agreement was entered into Massey also held claims in his personal right against the Judgment Debtor Charles W. White.

It will be seen from the Agreement that the assignments of the Judgments were made for the purpose of placing the Judgments in the hands of Massey to be handled by him as claims against White, but with the distinct understanding, as follows:

"And the party of the first part further agrees that all moneys which may be realized or collected by him under and by virtue of the said Judgments shall be paid over to Messrs. Hampton & Hampton of Gainesville, Florida, the Attorneys for the parties of the second part, to apply on the purchase price of said Judgments, until the said purchase price is fully paid. And further agrees that the title to any and all property, real or personal, which may be acquired under or by virtue of the said Judgments, shall be held in the name of W. W. Hampton, as Trustee until such time as the purchase price of the said Judgments agreed upon shall have been paid,

"And it is further agreed that upon completion of the payment of the purchase price of said Judgments, the title to any and all property which shall have been acquired in trust as aforesaid shall be conveyed by the Trustee to the party of the first part to these presents, or his nominee.

"Should the said Comer D. Massey fail to realize on the said Judgments and Executions, or neglect to institute and prosecute the proposed litigation, he shall reassign said Judgments and Executions to the Plaintiffs therein, if so requested by the Plaintiffs in execution."

So, as a matter of law, Massey assumed the position of Trustee of all funds that should come into his hands from the Judgment debtor up to and including the sum of $6,000.00 for the use and benefit of the assignors of the Judgments.

The time of performance was to be within two years after date of the agreement, unless in the meantime Massey had instituted litigation under the Judgments; then the time was to be extended until the termination of the litigation. The bill alleges that litigation was instituted by Massey and within the two-year period Massey caused levy to be made upon whatever equitable interest White may have had in lands known as the Pineapple Orange Lands and Orange Lake Corporation lands; that in 1925 Massey brought an action against White based on Massey's personal claims above mentioned and sometime later those claims were reduced to judgment. White instituted suit against Pineapple Orange Company, et al., to establish his interest in the Pineapple Orange lands. Massey intervened in that suit under the personal judgment, although at that time some of the suits were still pending based upon the judgments in favor of First National Bank of Gainesville and the Grahams.

No re-assignments of the Judgments were ever made. Massey continued to hold the Judgments as assigned to him.

In August, 1934, Massey and White entered into an agreement whereby White agreed to pay Massey one-third (1/3) of the proceeds of his recovery against the Pineapple Orange Company, not to exceed $27,500.00 and Massey, party of the second part, agreed that,

"The execution and delivery of said assignment or transfer to execute and deliver unto the party of the first part a complete release of all judgments, suits, accounts or causes of action existing in favor of the party of the second part, against the party of the first part, sufficient in form and substance as may be required by the attorneys representing the party of the first part of the court in which said cause is pending, and upon delivery of the instruments herein contemplated, each of the parties hereto shall execute a mutual release discharging each other from all liability, the one to the other, for all things from the beginning of time to the date hereof."

On December 13, 1934, final decree was entered in the suit of White v. Pineapple Orange Company and thereafter Massey executed a release to White in the following language:

"KNOW ALL MEN BY THESE PRESENTS, that I, Como D. Massey, of Ocala, in the County of Marion and State of Florida, do hereby remise, release and forever discharge Charles W. White, of Ocala, in the County of Marion and State of Florida, his heirs, executors, and administrators, of and from all and all manner of actions, and cause of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, claims and demands whatsoever in law or equity, which against the said Charles W. White I ever had, now have, or which my heirs, executors, administrators, or assigns, or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing what-

soever, from the beginning of the world to the date of these presents.

"IN WITNESS WHEREOF I have hereunto set my hand and seal the 15 day of July, 1936."

The bill of complaint alleges:

"That at the time of the purchase of the judgments hereinabove described against the said Charles W. White and his respective corporation, the said C. D. Massey had other claims against the said Charles W. White, and among these claims were two certain promissory notes, one dated 1912, and the other dated prior to the 22nd day of January, 1923, the date of the purchase of your orator's judgment; that your orator's judgments at said time were prior liens against the assets and property of the said Charles W. White and the said Como D. Massey well knew that before he could recover on his said open notes, it would be necessary for him to in some manner, by purchase or otherwise, to secure the said judgments belonging to your orators; that in 1925 the said C. D. Massey reduced said notes to judgment; that after judgment Charles W. White attached said judgment as having been obtained through fraud and this suit was pending on the_____day of August, 1934."

The bill of complaint further alleges:

"That pursuant to said contract with said White, and without notice to your orators and without your orators' knowledge or consent, the said C. D. Massey caused a Decree to be entered in the cause of Charles W. White against the Pineapple Orange Company and others (the same cause in which he had filed a Petition of Intervention) setting up that, based on his Judgment against Charles W. White for $18,000.00, which judgment had been recovered on the two promissory notes above described, he was entitled to one-third of the proceeds coming to the said Charles W. White from the sale of the properties to the Orange Lake Corpo-

ration, in a sum not less than $27,500.00 and that thereafter, the said C. D. Massey collected large sum or sums of money, the exact amount of which is unknown to your orators, and is now about to collect from the Orange Lake Corporation, an additional sum."

And, the bill further alleges: "That the said Como D. Massey, in entering into said agreement has fully and completely released and discharged the Pineapple Orange Company, the Orange Lake Company, and all other parties, from any right or claim that the said Massey had, or might have had by virtue of the judgments assigned to him by your orators; that the only way that your orators have of enforcing these judgments which were valid judgments at the time of the assignment, and are now barred by the statute of limitations, was through the suits that the said Massey had started against Charles W. White, Pineapple Orange Company and Orange Lake Corporation, and other defendants, and that as the said Como D. Massey has released and discharged all of these defendants from any claims, suits or demands, that he might have, your orators' claim will be completely defeated unless protected by this Honorable Court."

We hold that the allegations of the bill of complaint are sufficient to state a case in equity against Massey and on behalf of the complainants.

It is contended that at the time of the execution of the release and the agreement by White to pay Massey one-third of the proceeds which he might receive from Pineapple Orange Company not to exceed $27,500.00, Massey no longer held claims against White by reason of the Bank and Graham judgments because they were then barred by the statute of limitations. It is true that these judgments could not then have been enforced against White because of the statute of limitations but they still constituted claims which

White may have felt morally bound to pay and they were then such claims in the hands of Massey. When Massey entered into the contract with the Bank and the Grahams and took the assignments of their respective judgments, he became bound as Trustee to assume no position adverse to his *cestui que trustant*. Bellamy v. Bellamy, 6 Fla. 62 and 115; Gary v. Kissimmee River Cattle Co., 85 Fla. 268, 95 Sou. 657. Because of his status as Trustee as long as that status continued, Massey could not lawfully enforce his personal claim or judgment against White in preference to enforcing the judgments of his *cestui que trustant*. Neither could he enter into a compromise settlement with the common debtor for a valuable consideration releasing the debtor "of and from all and all manner of actions and cause of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, claims and demand whatsoever in law or in equity which against the said Charles W. White I ever had, now have, or which my heirs, executors, administrators or assigns, or any of them, hereafter can, shall or may have for or by reason of any cause, matter or thing whatsoever from the beginning of the world to the date of these presents," without being required to account to the *cestui que trustant* for the consideration received for such release, or for so much thereof as he was bound under his agreement with the *cestui que trustant* to pay over to them upon the enforcement or collection of the judgments assigned to him under the agreement creating the fiduciary relation in regard to such judgments.

The allegations of the bill of complaint, and in fact the whole record, show that the trust relation was never terminated. The trust could not be destroyed by failure or omission of Trustee to perform his duties promptly. Acts of omission of the Trustee in performing the details of the

trust will not destroy it. Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 Sou. 860.

There is much in the record concerning suits which were prosecuted by Massey and other details which could have no controlling effect on the result of the present litigation.

The allegations of the bill of complaint are sufficient to establish the relationship of Massey as Trustee for the benefit of the First National Bank of Gainesville and the Grahams of the judgments assigned to Massey with authority to collect the same and to account to the assignors for the sum of $6,000.00 of such collection; that Massey accepted the trust and moved to execute the same; that the trust was never terminated by any agreement or action between Massey and his *cestui que trustant;* that by agreement with the judgment debtor who was also a judgment debtor of Massey personally, he made a settlement under which large sums of money have come annd will come into his hands. Under the law of trusts he could not have the benefit of this agreement personally to the exclusion of his *cestui que trustant,* regardless of whether he contemplated the settlement as one for the benefit of his *cestui que trustant* or not. This being true, equity has jurisdiction to enforce an accounting and it was error to dismiss the bill. Royal Indemnity Co. v. Knott, 101 Fla. 1495, 136 Sou. 474, and cases there cited.

So, the order appealed from is reversed and the cause remanded for further proceedings.

So ordered.

ELLIS, C. J., and WHITFIELD and CHAPMAN, J. J., concur.

BROWN, J., dissents.

TERRELL, J., not participating.

BROWN, J. (dissenting).—The question involved here is not merely whether the bill of complaint was sufficient to

withstand motion to dismiss. The decree appealed from shows that the cause was submitted and heard upon the bill of complaint and supporting affidavits of the plaintiffs, and upon the sworn answer of defendant Massey, with supporting affidavits, and upon plaintiff's application for temporary injunction, and upon the motion to dismiss incorporated in the answer of defendant Massey. When all of these matters are considered, I think the Chancellor's decree is correct and should be affirmed.

## On Petition for Rehearing.

Per Curiam.—On rehearing several reasons are offered why the original opinion entered herein should be vacated and set aside but these contentions are grounded largely on questions of fact rather than principles of law. One of the fundamental questions here is: Does the bill of complaint contain equity? The lower court sustained a motion of defendants to dismiss the bill of complaint and did make and enter an order dismissing the same. The bill of complaint alleged, among other things, that the defendant, C. D. Massey, on January 2, 1923, by assignment became the owner of certain judgments and executions thereon obtained of the First National Bank of Gainesville and the heirs of James M. Graham against Charles W. White and the Consolidated Chittitu Company, a corporation. These judgments and executions based thereon were assigned to C. D. Massey under two agreements dated December 30, 1922, and January 2, 1923, and signed by the defendant, C. D. Massey, and the First National Bank of Gainesville and the heirs of the late James M. Graham. These agreements created or established duties and obligations binding on the respective parties. It appears that the Grahams and the Bank, according to these instruments, had each performed their duty, respectively, thereby created and a like-

wise corresponding duty and obligation rested on the defendant Massey growing out of the terms and conditions thereby imposed.

After the assignment of the judgments and executions under the terms of the agreement, defendant Massey was active in his effort to obtain payment thereof as shown by a number of suits filed in Alachua and Marion Counties. Massey reduced to judgment against White personal obligations and continued his efforts to collect or reduce to cash not only his judgments against White but the judgments of the Graham heirs and the Bank, which he controlled by assignment and written agreement. The bill of complaint alleges that he was successful in his efforts by litigation or otherwise, in obtaining a settlement which was placed in contract form and signed by Massey and White, wherein White agreed and was to pay and Massey was to receive, as a result of said agreement, a sum of money not in excess of $27,500.00. That a satisfaction and accord of all claims, debts, demands, judgments and suits of every nature and kind or character which C. D. Massey had or owned against Charles W. White was signed by C. D. Massey, who at the time was the owner by assignment of the Bank and Graham heirs' judgment, and in obtaining these judgments obligated himself to pay therefor the sum of $6,000.00. Massey gave the accord and satisfaction to White and was receiving the sum of $27,500.00. The purpose of the suit at bar was to obtain an accounting of these moneys coming to him from White. The prayer sought a restraining order from a further payment of these moneys under the terms of his agreement with White, and likewise an accounting showing the amount due the Graham heirs and the Bank under the terms of the agreements wherein the judgments and executions were assigned to Massey.

A provision of the contract dated January 2, 1923, and signed by the First National Bank of Gainesville and the Graham heirs on one part and the defendant Massey on the other, contained the following language: "Should the said Como D. Massey fail to realize on the said judgments and executions or neglect to institute and prosecute the proposed litigation, he (the said Como D. Massey) shall reassign said judgments and executions to the plaintiff herein (meaning the bank ond Graham heirs), if so requested by the plaintiffs in execution." Defendant Massey controlled the judgments from 1923 continuously until August, 1934, when he obtained a written obligation from White to pay him one-third of the proceeds of recovery against the Pineapple Orange Company, which should not exceed $27,500.00. Defendant Massey continued to control these judgments until December 13, 1934, when he executed and delivered to White the satisfaction and accord. He continued to control these judgments until September 8, 1936, when the bill of complaint was filed herein. He well knew during this period that he obligated himself to pay the sum of $6,000.00 for these judgments or re-assign them to the Bank or Graham heirs. We think under these conditions and circumstances the defendant Massey should have accounted to the Bank and Graham heirs for the money or property collected under the said judgments. Campbell v. Knight, Admr., 92 Fla. 246, 109 So. 577; Craft v. Craft, 74 Fla. 262, 76 So. 772; County of Escambia v. Blount Const. Co., 66 Fla. 129, 62 So. 650.

The bill of complaint contained equity, and if proven as required by the rules of evidence, would entitle the plaintiff to recover against the defendant Massey. The lower court erred in sustaining a motion of the defendants to dismiss the bill of complaint.

The second question for consideration here is: Did the lower court err in denying the plaintiffs' application for a restraining order on September 22, 1936? The bill of complaint was sworn to and had a letter attached as an exhibit dated December 30, 1922, addressed to C. D. Massey at Ocala, Florida, and signed by Hampton & Hampton, Attorneys for plaintiffs; likewise, an agreement dated January 2, 1923, signed by C. D. Massey, the Bank and the Graham heirs; affidavits of Lee Graham, and Fred Hampton to the effect that C. D. Massey had not paid the $6,000.00, which he had obligated himself and agreed to pay by his own written instrument dated January 2, 1923; the assignments of the judgments by the bank and the Graham heirs to C. D. Massey; a copy of the compromise agreements between Charles A. White and Como D. Massey dated August, 1934, whereby C. D. Massey was to execute a release and discharge of "all judgments, suits, accounts, or causes of action then existing in favor of C. D. Massey against Charles W. White;" a discharge "of action, suits, debts, dues, accounts, bonds, contracts, agreements, claims" * * * from Charles W. White to C. D. Massey "from beginning of the world to the date of these presents"—dated July 15, 1936; and copy of court decree by White against Pineapple Orange Company dated December 13, 1934.

The defendant filed an answer to the bill of complaint under oath on September 22, 1936, and incorporated therein a motion to dismiss. The answer admits some paragraphs of the bill of complaint and denies others. He likewise filed an affidavit on the hearing before the court below following, largely, the allegations of his sworn answer. A similar affidavit was filed by his attorney, T. S. Trantham; likewise copies of letters between counsel and the Clerk of this Court; and affidavits on the part of Hon. H. M. Hampton, of Ocala, and Hon. Martin Carraballo, of Tampa,

Florida. Due consideration has been given to the sworn answer, exhibits and affidavits in opposition to the temporary restraining order. While such matters are addressed to the sound discretion of a Chancellor, as was said in Godwin v. Phifer, 51 Fla. 441, 41 So. 597, it is our conclusion that the court below abused its discretion in denying the restraining order applied for.

The allowance of a temporary injunction rests in the sound judicial discretion of the trial court, guided by the established rules and principles of equity jurisprudence arising from the facts of the particular case. McMullen v. County of Pinellas, 90 Fla. 398, 106 So. 73; Savage v. Parker, 53 Fla. 1002, 43 So. 507; Gillis v. State Live Stock Sanitary Board, 94 Fla. 890, 114 So. 509; Builders Supply Co. v. Acton, 56 Fla. 756, 47 So. 822; Holt v. DeLoach-Edwards Co., 56 Fla. 902, 48 So. 1039; Allen v. Hawley, 6 Fla. 142, 63 Am. Dec. 198; McKinnie v. Dickenson, 24 Fla. 366, 5 So. 34; Taylor v. Florida East Coast R. Co., 54 Fla. 635, 45 So. 574; 127 Am. St. Rep. 155, 16 L. R. A. (N. S.) 307, 14 Ann. Cas. 472; Viser v. Willard, 60 Fla. 395, 53 So. 501; Linton v. Denham, 6 Fla. 533.

The former opinion of this Court is adhered to on rehearing.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

TERRELL and BROWN, J. J., dissent.

BROWN, J. (dissenting).—I dissent for the same reasons briefly stated in my dissent to the original opinion. I still think that when all the pleadings and affidavits which were before the chancellor when he denied the temporary injunction and dismissed the bill are considered, the action taken by the chancellor should not be disturbed.