MARY ANN PORTER, EXECUTRIX, APPELLANT, V. GEORGE W. FERGUSON, APPELLEE.

The declarations of a party, made at the time of a transaction, and expressive of its character, motive, or object, are indicative of a present purpose and intention, and are admissible in proof, like any other material facts.

Letters written and sent by a principal to his factor, with the goods consigned to his care, are indicative of the purpose and intention of the principal in regard to them, and are admissible in evidence, to show the instructions and orders given to the factor, or agent.

An instruction or charge given by the Court, which has nothing to do with the issue produced by the pleadings, is erroneous. The jury should respond to the issue of fact made by the pleadings. An instruction or charge, therefore, which is outside the case, having a tendency to mislead or divert the minds of the jury from the true matter in controversy, is good ground of reversal.

Appeal from a judgment of the Circuit Court of Monroe County.

This was an action of *assumpsit*, brought by the appellee, George W. Ferguson, against the appellant, executrix of Joseph Y. Porter, and was tried at the Fall term of the Court, in the year 1850, Hon. JOSEPH B. LANCASTER, Judge of the Southern Circuit, presiding.

The declaration sets forth an alleged verbal agreement between Ferguson and Porter, by which the former undertook to make and send, from time to time, to the latter, who was a merchant at Key West, arrow root, for shipment thence to New Orleans ; and a promise, on the part of Porter, to receive the arrow root, and ship it to the port of New Orleans, for sale in that market, for and on account of Ferguson. The declaration then avers that plaintiff, in compliance with his agreement, sent to Porter seventeen hundred and twenty-five pounds of arrow root, worth $140,

which was received by him, but which, contrary to his agreement, he shipped to Charleston, in the Fall of 1846, and that it was lost at sea. By reason whereof, the defendant became liable to pay to plaintiff the value of the said arrow root.

The defendant pleaded *non assumpsit.*

At the trial of the cause in the Court below, the plaintiff introduced Thomas J. Ferguson as a witness, who was sworn, and deposed to the contract, as laid in the declaration.

On the part of the defendant, John W. Porter, who was a clerk at the time of the alleged contract of defendant's testator, being sworn as a witness, contradicted in every important particular the testimony of plaintiff's witness.— According to the testimony of J. W. Porter, it appeared that defendant's testator undertook to make advances, and did make advances, upon arrow root sent to him by Ferguson, and that the agreement between them was, that Porter was to take the complete management and control of the arrow root—sell it in any manner he might think proper, and to the best advantage, and ship it, if he pleased to do so, from Key West to any port where he might deem it expedient to sell it, or which he might think best for plaintiff's interest ; and that, in the exercise of the discretionary power which he had under the agreement, he shipped the arrow root in question to Charleston, hearing that it was a better market than New Orleans at that time.

There was no other material or important evidence introduced or offered on the trial of the cause in the Court below.

The Court gave instructions, which presented the true issue to the jury ; but, at the request of the counsel for plaintiff, the following instruction in substance was also given, viz : " If the jury believe from the testimony, that it was the usage of trade for consignees for shipment at Key

West to insure on goods of others sent to them for shipment, without instructions as to insurance, and that J. Y. Porter shipped the arrow root in question without insuring it, and it was lost at sea, he was liable for the loss, and they ought to find for plaintiff." To this charge, defendant's counsel excepted; and this instruction (among other errors alleged to have been committed by the Court below on the trial of the cause, all of which are noticed in the opinion of this Court,) is assigned for error.

Verdict and judgment for plaintiff in the Court below.

*Hogue*, for Appellant.

*Towle* & *Papy*, for Appellee.

THOMPSON, *Justice*, delivered the opinion of the Court.

Several grounds of error are assigned upon the transcript of the record of the proceedings and judgment in this cause, which will be noticed in their order.

1. The first error assigned is upon the admission of the affidavit of the respondent, to prove the loss and destruction of certain original letters of Porter, the testator of appellant, so as to let in secondary evidence thereof. This point was very properly surrendered and abandoned by the counsel for appellant on the argument here. The affidavit of a party, as to the loss of a deed, document, or other writing, after evidence of the existence thereof by other testimony, is clearly admissible. 1st Greenleaf on Evidence, §§ 349, 558, and authorities cited in the margin.

2. The second error assigned is founded upon the exception taken at the trial to the introduction of the letters of respondent to Porter, which were produced by the appellant under a rule, and offered in evidence by the respondent. These letters appear to have been written at the opening, and during the continuance of the correspondence between the parties as principal and factor, and which seem to have accompanied the respective consignments of the goods as

they were, from time to time, made. The declarations of a party, made at the time of a transaction, and expressive of its character, motive, or object, are regarded as verbal acts, indicating a present purpose and intention, and, therefore, admitted in proof, like any other material facts. 1st Greenleaf on Evidence, § 108. These letters are to be considered as part of the *res gestae*, having been written and sent by the principal to the factor, with the goods consigned to his care, and are indicative of the purpose and intention of the principal in regard thereto. They are the instructions and directions of the owner of the property to the factor, his agent, and if they are not proper evidence, it is difficult to conceive how a factor could ever be made responsible to his principal for a deviation from the orders given. It is true, they are not conclusive evidence, for the factor may have refused to receive the consignment under the instructions, or may have insisted on some modification, or alteration thereof; but this is for him to show. Upon every point of view, the testimony was properly received, and this exception is overruled.

3. The third assignment of error is upon the exception taken at the trial to allow a question to be put to the witness, John W. Porter. This witness was introduced for the purpose of impeaching the credit of Thomas J. Ferguson, the witness for the plaintiff below; and the question propounded was, " Have you the means of knowing the general character of Thomas J. Ferguson, and if yea, from such knowledge, would you believe him upon oath ?" The question being objected to by plaintiff's counsel, was ruled to be improper, and disallowed by the Court.

In the English Courts, the practice is, to propound the question to the impeaching witness, in the precise terms employed in the question asked of the witness here, and involving in its scope the entire moral character of the person in question. See Phillips on Evidence, 292. Mr. Greenleaf,

14

in his treatise on evidence, (volume 1, page 541, note 3,) says: " Whether this inquiry into the character and reputation of the witness, should be limited to his reputation for truth and veracity, or may be made in general terms, involving his entire moral character and estimation in society, is a point upon which the American practice is not uniform." In North and South Carolina, and in Kentucky, the common law doctrine is practiced and defended ; in other States, the rule prevails, which limits the inquiry to the general reputation for truth and veracity. A majority of this Court are in favor of the recognition of the limited rule, as that which is most consonant with reason and propriety. For my own part, amidst the conflict of doctrine in the American Courts, I prefer, as the safest course, to hold to the common law practice. However, we are all of opinion, that, in the present case, the evidence sought could have been of but little, if any, importance. Besides the attack upon the character and reputation of a witness, there are other modes of discrediting him ; one of which is, by *disproving the facts* stated by him, by the testimony of other witnesses. This was, also, sought in this case, by the testimony of the same witness, John W. Porter, whose statements were in direct opposition to that of the witness, Ferguson. Would the additional statement of Porter, that the witness, Ferguson, was a man of bad moral character, and in his opinion, unworthy of belief upon oath, give more weight to his opposing statements, or further tend to weaken the impression made by Ferguson's evidence ? We think not. While the veracity of both stood unimpeached by other evidence before the jury, if the opposing and contradictory statements of Porter did not intrinsically possess sufficient merit to contervail the statements of Ferguson, it is very clear to our minds, that an impeachment by Porter of Ferguson's character for truth and veracity, would not meet with any consideration from the jury. This exception s likewise overruled.

4. The fourth assignment of error is upon the instruction given by the Court to the jury, upon the prayer of the counsel for respondent. If due attention had heen given to the matter put in issue in this cause, it would have been found one of much simplicity ; but the pleadings seem to have been disregarded at the trial by all parties, and questions wholly foreign to the issue have been raised, discussed and decided, and are now brought before this Court for review. The object of pleading is to ascertain, with certainty and precision, the matters of fact which are affirmed on the one hand, and denied on the other, and are thus mutually proposed and accepted by the parties for decision ; and the question, so produced, is called the issue. Under our practice, of allowing the defendant to plead as many pleas as he may think proper for his defence, even though they be inconsistent with each other, sometimes a case presents many issues of fact for the determination of the jury, but this case is not of that character.

The declaration is on a special *assumpsit,* and sets forth a contract or agreement by parol between Ferguson and the appellant's testator, which is in substance as follows : that Ferguson, who was a manufacturer of arrow root, would, from time to time, send and deliver to the said Porter, as his factor, parcels of the said arrow root, and that Porter should receive and ship the same to the port of New Orleans, and there sell, or cause the same to be sold, for and on account of Ferguson ; that, in pursuance of said agreement, Ferguson, in September, 1846, delivered to Porter seventeen hundred and twenty-five pounds of said arrow root, of the value of $140, and which the said Porter, under the agreement aforesaid, should have shipped to New Orleans, but in violation of his agreement, and against the consent of Ferguson, he shipped the goods to Charleston, whereby the same were wholly lost.

The plea is *non assumpsit.* What is the question of fact

evolved by these pleadings? By *Reg. Gen.* of January Term, 1847, title " Pleadings in Particular Actions," § 1, it is provided that, " in all actions of *assumpsit*, except on bills of exchange and promissory notes, the plea of *non assumpsit* shall operate only as a denial in fact of the express contract or promise alleged, or of the matters of fact from which the contract or promise alleged may be implied by law." Applying this rule, and guided in its application by the examples given in the succeeding paragraphs of actions of a kindred character, we say the point of fact in controversy raised by the plea of *non assumpsit* in this case is, whether such a contract or agreement as that alleged in the declaration was, in fact, made between these parties—the breach of that contract is not put in issue thereby.

At the trial of the cause, the Court, on the prayer of the respondent, instructed the jury as follows, viz : " If the jury believe, from the testimony, that it was the usage of trade for consignees for shipment at Key West at that time, to insure on goods of others *sent to them for shipment, without* instructions as to insurance, and shipped by them ; and J. Y. Porter shipped the arrow root in question without insuring it, and it was lost on the voyage at sea, he became liable to pay plaintiff the value of it, and in that case, they ought to find for the plaintiff, &c." Now, what has this instruction to do with the issue which the jury were sworn to try ? The instruction directs the attention of the jury to a breach of the contract or agreement, when the breach is not put in issue by any plea—a breach, too, which is not alleged in the declaration. The breach alleged is for shipping to Charleston, when he was bound by his undertaking to ship to New Orleans, whereby the goods were lost—the deviation is the gist of the breach ; the negligence or omission to effect an insurance on the goods against the perils of the sea, which, by the usage of trade, he should have done, is not charged. Whether the instruction is or is not

correct in point of law, is here not necessary to be decided—it was not in issue, and, therefore, irrelevant, and should not have been given ; and if it tended to mislead the jury, and withdraw their minds from the consideration of the true issue, it is erroneous.

The instructions given to the jury in conclusion, it is true, do put the issue made by the pleadings to the jury, but these instructions are also justly obnoxious to the same charge of introducing extraneous matter, for they also put to the jury the question of the breach of the contract, when, in fact, the breach was neither denied, nor confessed and avoided, by plea. As before remarked, the appellant had, in the Court below, put her defence on the simple and isolated ground, that her testator never made any such agreement as that alleged in the declaration. No evidence was pertinent or proper, save what would conduce to prove or disprove this fact, and saving, also, the proof of the value of the goods, as a guide to the jury in the assessment of damages, in case they found the issue for the plaintiff.

It becomes, therefore, very important to inquire, whether the jury were probably misled by the instruction first given, and their attention thereby withdrawn from the consideration of the true, and directed to a false, issue ? It will be seen, from the evidence set forth in the bill of exceptions, that the testimony on the subject of the agreement was very contradictory—the witness for the plaintiff stating it distinctly and clearly as it was set forth and alleged in the declaration, and the witness for the defendant stating as distinctly and clearly the reverse, by affirmative allegations of other and inconsistent terms and conditions of the agreement in relation to the arrow root. In the absence of the first instruction, we should have presumed that the jury, under the last instruction, had duly exercised their province of weighing the testimony, and had responded to the issue, that there was such contract, agreement and undertaking as

that alleged in the declaration ; but when we reflect that the task of deciding between the opposing and contradictory statements of two persons is at all times unpleasant, and that jurors, like other men, are ever ready to avail themselves of any fair and honorable means to decide the controversy without passing upon and impugning the veracity of any of the witnesses, and examine the first instruction given them, we are led irresistibly to the conclusion that the jury in this case must have based their verdict upon that charge.   They could find this instruction upon the contract as stated by either witness.   It placed the plaintiff's claim, not upon the contract set forth in the declaration, but upon the negligence of the defendant's testator in his capacity of factor, in omitting to do that, in the performof his duty as factor, which, by the usage of trade, he should have done, to wit, to insure the goods shipped against the perils of the sea, by means of which negligence, the goods were lost.   Both witnesses proved a contract of factorage. The plaintiff's witness a special and particular agreement, that the goods were to be re-shipped by the factor to New Orleans, for sale there—the defendant's witness proved that the agreement was, that the factor was to ship to any port or place he pleased, or which he might think to the interest of his principal.   By changing the issue from the one made by the declaration and plea, to wit, the making the agreement itself, and putting it before the jury, on the question of negligence, it is evident the jury would conclude it unnecessary to decide the question of credibility resulting from the contradictions of the witnesses, because, if the liability of the factor depends on the question of diligence, and they find he has been negligent under the agreement proved, their duty is accomplished, by finding that issue.   They could, under the statements of either witness as to the contract, respond to the case made by the instruction, and probably felt themselves bound to do so, although they may have

believed that the plaintiff had failed to prove the contract as laid in his declaration ; and yet the only issue they were sworn to try was, whether there was, in fact, such contract.

The breach laid in the count not being denied or confessed or avoided by plea, was admitted, and the jury finding the issue upon the agreement for the plaintiff, were authorized to proceed to the assessment of the damages sustained, according to the evidence on that point of the value of the goods.　We may remark in this connection, that, although the declaration contains, in addition to the special count before referred to, a count for goods sold, and money had and received ; yet it is not claimed or pretended that any evidence was offered to the jury to authorize a finding upon that count, and for which reason we did not notice it, in adverting to the case made by the declaration.

5. Three instructions were asked for in the Court below by the appellant here, and upon the refusal of the Court to grant the prayer an exception was noted, and this exception forms the fifth assignment of error.　We do not express any opinion upon the principles of law asserted by these instructions, but we say, that, as they relate entirely to the question of the assumed obligation of the factor to procure insurance on the goods, a matter not legally and properly in controversy in the cause, they were irrelevant, and for that cause ought not to have been given.

We regret very much indeed, as the amount involved in this controversy is small, that we are compelled to remit the case for a new trial, but believing as we do that the jury were misled by the *oral issue* made at the trial upon a breach of the contract, not the breach assigned in the declaration and not in any wise in controversy in this suit, we have but one plain duty before us, which is to order and adjudge that the judgment of the Circuit Court be reversed and set aside, and the cause remanded for a new trial, in accordance with this opinion.