S. K. GILLIS, *Appellant*, v. STATE LIVE STOCK SANITARY BOARD, A CORPORATION; E. N. MOLINE, TRY H. ADKINSON, CLAUDE ADKINSON, DAN CARTER, D. W. CARTER AND COON GAINEY, *Appellees*.

Opinion Filed November 8, 1927.

*S. K. Gillis,* for Appellant;

*D. Stuart Gillis,* for Appellees.

Gibbs, Circuit Judge.—The appellant, complainant in the court below, filed his bill of complaint, later amending it, against the appellees, defendants in such court, averring in substance that he lived in the town of De-Funiak Springs; that he was the owner of a milch cow with its calf; that each was tick free; that both were in a tick-free enclosure, and, with the exceptions pointed out in the amendment, they had been in such enclosure for a considerable period last past; that the defendants had taken from such enclosure against the consent of complainant and while he was absent from town the cow and calf and caused them to be dipped in an unsanitary, filthy and improperly made vat; that they had, thereafter, caused the animals to receive paint marks resulting in injury to them; that the complainant was forced to pay the sum of two dollars, alleged costs, before he could peaceably obtain possession of the cow and calf; and that the defendants intended to continue to dip said cow and calf at intervals of time thereafter and to make such unlawful charges. The complainant prayed that the court would enjoin and restrain the defendants as long as such cow and calf were tick free and kept in a tick free enclosure from driving,

roping, dipping, painting, penning, keeping them from the possession of the appellant and otherwise interfering with them. He filed his own and another affidavit. The defendants in resisting complainant's application for a temporary injunction filed a number of affidavits. In the affidavit of E. N. Moline, one of the defendants, he says that he is a veterinarian of many years experience in diseases of live stock and especially the disease known as Texas Fever, and has had large and extensive experience in the work of systematic tick eradication in Florida and other Southern States, an employee of the Federal Bureau of Animal Industry and as such has been assigned to the work of systematic tick eradication in Florida in conjunction and co-operation with the State Live Stock Sanitary Board of Florida; that such board by due and regular resolution is carrying on dipping operations in all parts of Walton county and that all of the cattle in that county have been by the Board placed under quarantine; that by virtue of the provisions of law all the territory and cattle of Florida are declared to be tick infested and are, therefore, required to be dipped regularly under and by direction of the State Live Stock Sanitary Board; that affiant denies that cow and calf have been and are kept in tick free enclosures and that such enclosures are tick free; that, on the contrary, the several lots described in the bill are not in one enclosure; that lots 48 to 51 are within one enclosure and that within said enclosure there are one or more smaller enclosures in which said cow and calf are kept at different times; that said lots are bounded on all sides by public streets upon and over which are driven from time to time tick infested cattle, including horses and mules, thus exposing said territory and cow and calf to infestation or reinfestation; that lots 52 to 55, inclusive, described in said bill are likewise bounded on all sides by

public streets over which tick infested cattle are carried
and driven, and are covered in one or more enclosures;
that lots 56 to 67 inclusive, described in the bill are like-
wise bounded on all sides by public streets over which tick
infested cattle are driven, and is covered by one enclosure;
that the moving of said cow and calf from one of said
enclosures to another involves the passage of the same over
public streets over which tick infested cattle are driven
from time to time; that cattle tick fever is highly infec-
tious and tick infestation easily communicated from the
ground, grass, shrubbery, or other environments in which
tick infested live stock move and that said cow and calf by
virtue of these facts may be easily infested—even though
they may have been and are now tick free, which is denied;
and that they have been and are now kept in tick infested
territory; that the dipping vat is constructed in the ap-
proved manner and in the same way that all other vats
are constructed; that such construction is that best adapted
to such work; that all reasonable precautions are taken
not to injure the cattle being dipped; that if any injury
has occurred to complainant's cattle it has not been due
to the wilful act of any agent or employee of the State
Live Stock Sanitary Board, but to the inherent nature of
the animal and the character of the operation of dipping;
that from time to time the pens and vats are cleared in
order to avoid offensive conditions so far as possible; that
at or about the time of the notice of application for injunc-
tion the vat and pens involved were cleaned in the regular
course, and that the fluids or other substances which
necessarily drift or flow into the dipping vat are immedi-
ately rendered harmless by the highly disinfectant prop-
erties of the fluids contained and no impurities or dis-
eases can thereby be communicated to the cattle. Supple-
menting this affidavit were other affidavits filed on behalf

of the defendants tending to show that the animals were from time to time in enclosures subject to infection from cattle ticks.

No prayer appears in the bill of complaint expressly praying for issuance of a temporary injunction.

The chancellor, upon application of complainant for a "temporary restraining order against the respondents as prayed for in said bill of complaint" denied such application.

An appeal was taken to this Court and the single error assigned is that the trial court erred in denying the complainant's application for a temporary injunction.

No attack has been made on the constitutionality of the Act (Chapter 9201, Laws of Florida, 1923), under which such dipping was had, though there is an attack upon the right of the Legislature to declare the State tick infested territory. We do not deem essential to this decision a determination upon either point.

The complainant contends that he is within the exception contained in Section 14 of such Act, to-wit:

"It shall not be necessary under the provisions of this Act to dip the family milch cow or her calf, if such cow or calf are at all times tick free and are at all times kept in a tick-free enclosure."

There are certain familiar principles which guide an appellate court in cases of this kind.

The granting of injunctions rests in the sound discretion of the court—Allen v. Hawley, 6 Fla. 142; McKinne v· Dickinson, 24 Fla. 366, 5 So. 34; Savage v. Parker, 53 Fla. 1002, 43 So. 507; Taylor v. Fla. E. C. R. Co., 54 Fla. 635, 45 So. 574; Builders Supply Co. v. Acton, 56 Fla. 756, 47 So. 822; Viser v. Willard, 60 Fla· 395, 53 So. 501.

An interlocutory order or decree denying a temporary injunction or restraining order, will not be reversed unless

there was clearly an abuse of judicial discretion in such denial. Simms v. Patterson, 53 Fla. 984, 43 So. 421; Shaw v. Palmer, 54 Fla. 490, 44 So. 953; Holt v. Hillman-Sutherland, 56 Fla. 801, 47 So. 934.

When it does not clearly appear that a chancellor's ruling refusing a temporary injunction was against the weight of evidence, such ruling cannot be held to be erroneous. Blumenthal v. Mohlmann, 49 Fla. 275, 38 So. 709.

It appears to us that the chancellor has determined this cause upon the evidence and one cannot say that it clearly appears that his decree was against the weight of evidence or an abuse of judicial discretion.

The decree of the chancellor should be affirmed.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM AND BROWN, J. J., concur.

BUFORD, J., disqualified.