S. H. CLARK, Individually and as Harbor Master of the Port of Miami, Florida, Petitioner, v. GEORGE KREIDT, Respondent.

199 So. 333

En Banc

Order Entered June 4, 1940

On Reconsideration December 20, 1940

*Elmore Cohen* and *H. H. Taylor* and *C. F. P. Brigham,* for Petitioner;

*Irving L. Kahlback, Shutts, Bowen, Simmons, Prevatt & Julian* and *Ragland, Kurz & Layton,* for Respondent.

ORDER

PER CURIAM.—This is an appeal by certiorari from an interlocutory decree overruling a motion to dismiss the bill of complaint and from a decree granting a temporary restraining order. The appeal was prosecuted under Rule 34 of the Rules of this Court.

The record and briefs have been examined and Mr. Justice WHITFIELD, Mr. Justice BUFORD and Mr. Justice CHAPMAN are of the opinion that the writ of certiorari should be

granted and the judgment appealed from quashed, while Mr. Chief Justice TERRELL, Mr. Justice BROWN, and Mr. Justice THOMAS are of the opinion that the writ of certiorari should be denied.

When the members of the Supreme Court sit en banc for the consideration of appeals under Rule 34 of the Rules of this Court and after full consultation, it appears that the members of the Court are premanently and equally divided in opinion as to whether the writ of certiorari should be granted and there is no prospect of an immediate change in the personnel of the Court, the writ will be denied and the decree or order below affirmed.

It is accordingly ordered, adjudged, and decreed that the decree appealed from be affirmed.

Affirmed.

TERRELL, C. J., WHITFIELD, P. J., BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.

## ON CERTIORARI—ON RECONSIDERATION

CHAPMAN, J.—The record in this case discloses that George Kreidt filed his amended bill of complaint in the Circuit Court of Dade County, Florida, against S. H. Clark, individually and as Harbor Master of the Port of Miami, in which it was alleged that he was the owner of a small vessel, the MV Pilot No. 1, and was engaged in carrying freight, passengers and mail upon regular sailings from the Port of Miami to the Island of Bimini, B. W. I.; that he owned his own dock in the Port of Miami and has never had occasion to dock his boat at a dock, wharf or station in the Port of Miami other than his private dock or wharf, and for this reason is not, as a matter of law, required to pay fees for services rendered by the Harbor Master of the Port of Miami.

4

It is alleged that the harbor master, nor his deputies, had never rendered the plaintiff official services as harbor master, but submitted to the plaintiff a bill in the amount of $5.00, which he is required to pay before he can obtain a clearance of his vessel by the Collector of Customs of the Port of Miami, and the refusal to permit or allow his vessel to clear by the collector of customs without presenting a receipt by the harbor master for all bills due causes an irreparable injury to the plaintiff in that he will not be able to perform his contracts for carrying freight, passengers and mail upon regular sailings from the Port of Miami to the Island of Bimini and return.

The amount of the bills submitted as harbor master fees is the sum of $5.00 and defendant threatens the plaintiff with suit to collect the fees and each fee presented constitutes a separate suit; that the plaintiff will be required to continue to pay other harbor master fees in order to obtain the clearance of his vessel, which are paid under protest; that in order to avoid a multiplicity of suits, irreparable injury and because the plaintiff has not a sufficient remedy at law, an injunction or restraining order should be entered against the defendant restraining him from rendering bills in the form of harbor master fees when in fact no official services have been rendered the plaintiff.

The defendant, in the court below, filed a motion to dismiss the amended bill of complaint on the grounds: (a) the amended bill of complaint is without equity; (b) the plaintiff has an adequate remedy at law; (c) the facts alleged are insufficient to show irreparable damages.

On hearing, the lower court entered an order overruling and denying the motion of the defendant below to dismiss the amended bill of complaint, and in the same order granted a temporary restraining order, restraining the defendant

Clark, or any of his deputies, from rendering bills for services rendered plaintiff when no such services were actually rendered to the plaintiff by said harbor master or his deputies.

The defendant below filed an answer to the amended bill of complaint and a motion to dissolve the injunction or restraining order previously entered, but the same was by the lower court overruled and denied. The plaintiff filed a motion to strike described portions of the defendant's answer but the same was not ruled upon by the lower court.

From the order denying the motion to dismiss the amended bill of complaint and the order granting the temporary injunction or restraining order an appeal has been perfected to this Court and the same is here for review.

The order restrained the defendant below from presenting to the plaintiff bills for services rendered as harbor master when as a matter of truth and fact no official duties as Harbor Master of the Port of Miami were required by the plaintiff of the defendant, as he owned his own dock or wharf and used his vessel in the transportation of freight, passengers and mail from the Port of Miami to Bimini and return.

It is established law in Florida that a writ of injunction is an extraordinary writ and should not be granted lightly but cautiously and sparingly, and, while the writ may be beneficial, it should not be made an instrument of oppression and injury. See Savage v. Parker, 53 Fla. 1002, 43 So. 507; Godwin v. Phifer, 51 Fla. 441, 41 So. 597; Willis v. Hathaway, 95 Fla. 608, 117 So. 89. The granting or the withholding of a restraining order or injunction rests in the sound discretion of the chancellor. It is true a chancellor has broad judicial discretion in granting, denying, dissolving or modifying injunctions and where the evidence taken by

the court in person is sufficient to warrant the action of the Chancellor, the appellate court will not interfere where no abuse of discretion appears. See Shaw v. Palmer, 54 Fla. 490, 44 So. 953; Gillis v. State Live Stock Sanitary Board, 94 Fla. 890, 115 So. 509. In the case at bar no testimony was taken in person by the chancellor below and the restraining order issued on the sworn bill of complaint. It is incumbent upon the petitioner, before a reversal can be granted here, to show an abuse of discretion in issuing the restraining order on the part of the chancellor below.

The motion to dismiss the amended bill on the ground that the same was without equity admits as true the material allegations to the effect that the plaintiff was the owner and master of the vessel, the MV Pilot No. 1, and likewise that plaintiff owned his dock or wharf situated in the Port of Miami and that he as owner of the vessel was under contracts for the transportation of freight, passengers and mail from the Port of Miami to the Island of Bimini, B. W. I., and return; that the plaintiff as owner and master of the vessel and in the operation of its business did not need and on no occasion was it necessary to dock his boat at any dock or wharf other than the privately owned dock of the plaintiff and for these reasons the harbor master, nor any of his deputies, had at any time rendered him services of any kind, but on *each* occasion when the plaintiff removed his vessel from the Port of Miami he was required to pay the harbor master the sum of $5.00 for alleged harbor master compensation.

It is here contended that the plaintiff below, as the owner of a *private* wharf situated in the Port of Miami at which he docked his boat on entering the port without the services of the harbor master, was not required by law under these circumstances to pay the bills for harbor master services

and that the harbor master should be perpetually restrained from presenting bills to the plaintiff for the alleged harbor master services.

The defendant below contended that under the provisions of Section 3914 C. G. L., a harbor master is authorized to receive from the master, owner or consignee of vessels coming into port, compensation for the services rendered by the harbor master, or deputy, a sum not exceeding twenty dollars, according to the amount and value of the services rendered. While the law allows or permits the harbor master to charge the plaintiff the sum of $20.00 each time the vessel of the plaintiff enters the Port of Miami, the defendant insisted upon payment of the minimum fee of $5.00, which the plaintiff claims is invalid because he owns his own dock or wharf and harbor master services are not required. The lower court sustained the theory of the plaintiff's case and in effect held that Sections 3911, 3912 and 3914 C. G. L. had no application to the facts here involved, because the plaintiff owned his own dock, made regular trips from the Port of Miami to Bimini and return, and the services of the harbor master were not rendered or requested of the defendant by the plaintiff.

It is clear that a decision of this case must turn on the construction or interpretation of Sections 3911, 3912 and 3914, *supra:* Was it the intention of the Legislature, in the enactment of those sections, to except therefrom those persons, firms and corporations owning wharves or docks situated at the ports in the State of Florida? A cursory or superficial examination thereof shows that the Legislature failed by apt words or other expressions to except from the provisions or terms of these sections owners of docks or wharves situated within a port. If the Legislature intended so to do, it certainly failed or omitted to employ language

to convey this inference. If the Legislature had said that "the provisions of these sections shall not apply to the owners of docks or wharves located within a port," then the ruling of the court below would have been well bottomed.

It is well established that the language of a statute may be so plain as to fix the legislative intent and leave no room for interpretation or construction. See Osborne v. Simpson, 94 Fla. 793, 114 So. 543. Where the legislative intent is clearly manifest by the language used, considered in its ordinary grammatical sense, rules of construction and interpretation are unnecessary and inapplicable. See State v. Beardsley, 4 Fla. 109, 94 So. 660. Where the language of a statute is plain and unambiguous and admits of but one construction or meaning, effect must be given to it accordingly, and the courts, in construing such statute, would not be justified in departing from the plain and natural meaning of the language used in order to supply some supposed omission on the part of the Legislature. See Board of County Comm'rs. v. State ex rel. Moore, 96 Fla. 495, 118 So. 313; A. B. Douglass, Inc., v. McRainey, 102 Fla. 1141, 137 So. 157. The intention of a statute is the law and the intent should be ascertained and effectuated. See Peoples Bank v. Arbuckle, 2 Fla. 479, 90 So. 458.

It is not contended that the bill or statement rendered in the sum of $5.00 is unreasonable or that the harbor master failed to perform his duties as such in and about the vessel coming into the Port of Miami, but it is contended that the harbor master had no duties to perform under Section 3914 C. G. L., as applies to the vessel of the plaintiff when it enters the Port of Miami.

This Court sustained the statutes here involved in the case of Vincent v. Foss & Crabtree, 118 Fla. 717, 160 So. 49, and held that these statutes, together with others therein

cited, involved a reasonable exercise by the State of Florida of its police power. It is easy to comprehend why the Legislature desired to safeguard the health, general welfare and best interests of the people by policing each vessel and crew entering a port, and the fees here charged provide the method of financing the costs of such supervision and inspection under the police power of the Constitution as the Legislature intended.

In the case of City of Miami Beach v. The Texas Oil Co., 141 Fla. 616, 194 So. 368, this Court had before it an ordinance enacted under the police power, and said:

"While constitutional guaranties cannot be transgressed, it is well settled law that the possession and enjoyment of all rights are subject to the police power . . . and persons and property are subject to restraints and burdens necessary to secure the comfort, health, welfare, safety and prosperity of the people. See 11 Am. Jur., page 1006, par. 267. It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all property is held on the implied condition or obligation that its use shall not be injurious to the equal rights of others to the use and benefits of their own property. The public interest is paramount to property rights. See 11 Am. Jur., page 1009, par. 268. The right of the State to regulate a business which may become unlawful is a continuing one, and a business lawful today may, in the future, because of changed conditions, the growth of population, or other causes, become a menace to the safety and public welfare and the continuance thereof must yield to the public good. 11 Am. Jur., page 1044, par. 284. The determination of what businesses are affected with a public

interest is primarily for the legislature, but is always open to judicial inquiry. 11 Am. Jur., page 1060, par. 294; Tyson & Bro.-United Theatre Ticket Office v. Banton, 273 U. S. 418, 71 L. Ed. 718, 47 Sup. Ct. 426, 58 A. L. R. 1236. The law requires that all police regulations must be reasonable under all circumstances. The validity of a police regulation therefore depends on whether, under all circumstances, the regulation is reasonable or arbitrary and whether it is reasonably designed to accomplish a purpose falling within the scope of the police regulation. See Mutual Loan Co. v. Martell, 222 U. S. 225, 56 L. Ed. 175, 32 Sup. Ct. 74, Ann. Cas. 1913B 529."

The case at bar is ruled by Vincent v. Foss & Crabtree, *supra.* The writ of certiorari is hereby granted and the order appealed from is reversed.

It is so ordered.

WHITFIELD, BUFORD and ADAMS, J. J., concur.

TERRELL, C. J., BROWN and THOMAS, J. J., dissent.

ADAMS, J. (concurring).—I concur in the judgment to grant the writ and quash the injunction on authority of Vincent v. Foss & Crabtree, *supra,* and Clyde Mallory Lines v. State *ex rel.,* 80 L. Ed. 215.