The Honorable Ernest Ellison Auditor General State of Florida Post Office Box 1735 Tallahassee, Florida 32302
Dear Mr. Ellison:
This is in response to your request for an opinion regarding the general operation and effect of Ch. 83-324, Laws of Florida, which amends s 230.03, F.S., `not only as to the fixing, prescribing, determining, and otherwise delimiting of the powers, duties, and functions which school boards must or may exercise or carry out, but also upon the method, manner, or means by which their powers, duties, and functions must or may be carried out.'
Section 7 of Ch. 83-324, Laws of Florida, amended s 230.03, F.S., in relevant part, to provide that `[t]he district school system shall be managed, controlled, operated, administered, and supervised as follows:'
 In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power except as expressly prohibited by the State Constitution or general law. (e.s.)
Prior to this amendment, school districts and their governing boards have historically been treated in the same manner as special districts of the state, that is, having only such power and authority as is granted by the Legislature. Opinions of this office in the past have construed the statutory and constitutional provisions relating to district school boards to conclude that district school boards have no inherent powers, and possess only such powers that the Legislature has conferred on them. See, e.g., AGO's 83-14, 82-59, 80-73, 80-42, 76-61, 75-148. See also, Harvey v. Board of Public Instruction, 133 So. 868 (Fla. 1931); Buck v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959).
Thus, in the past, a district school board could not exercise a substantive power in the absence of a statutory provision conferring on the board such a power. In 1978, the Legislature amended s 230.03(2), F.S., to provide that a school board could `exercise any power for educational purposes except as otherwise provided by the State Constitution or law.' See, Ch. 78-86, Laws of Florida. That subsection, however, went on to define `educational purposes' to mean `any activity or power exercised in the establishment and maintenance of courses, classes, institutions, and services adequate to meet the educational needs of all citizens of the district.' This office consistently rejected the proposition that Ch. 78-86, Laws of Florida, granted district school boards so-called `home rule' powers, concluding that in providing a statutory definition for `educational purposes' the Legislature intended to confine the exercise of the board's authority to those matters and such term must be given a narrow construction. See, AGO's 83-14, 82-59, 80-42.
Section 7 of Ch. 83-324, Laws of Florida, in amending s 230.03(2), F.S., removed the definitional limitations upon the exercise of the district school board's authority and clearly provides that a district school board `may exercise any power except as expressly
prohibited by the State Constitution or general law.' (e.s.) The word `expressly' is defined as meaning definitely, explicitly, in direct or unmistakable terms, directly, distinctly, not by implication. 35 C.J.S. Expressly p. 342. See also, definitions of the adjective `express' in 35 C.J.S. p. 338; Pierce v. Division of Retirement, 410 So.2d 671, 672 (2 D.C.A. Fla., 1982). Language of a statute must be construed in its plain and ordinary sense unless a different connotation is expressed in or necessarily implied from the context of the statute. See, e.g., Gaulden v. Kirk,47 So.2d 567 (Fla. 1950); Maryland Casualty Co. v. Sutherland,169 So. 679 (Fla. 1936). Where the legislative intent is clearly manifested by the language used, considered in its ordinary grammatical sense, rules of construction and interpretation are unnecessary and inapplicable. See, e.g., Clark v. Kreidt,199 So. 333 (Fla. 1940); A. R. Douglass, Inc., v. McRainey, 137 So. 157
(Fla. 1931). Neither this office nor the courts may add anything to the statute and the legislative intent must be ascertained from the plain meaning of the words used in the statute. See, e.g., State ex rel. Harris v. King, 188 So. 122 (Fla. 1939). Thus, I am constrained to conclude that unless expressly prohibited by the State Constitution or general law, a district school board may exercise any power for school purposes in the operation, control, and supervision of the free public schools in its district.
A number of legal issues arise, however, as a result of other laws relating to the district school system and rules and regulations of the State Board of Education. The Florida School Code, Chs. 228-238, 240-244, F.S., is a comprehensive body of laws relating to public education and is in the nature of enabling legislation, rather than being prohibitory or restrictive in nature. Therefore, by operation of the 1983 amendment unless a provision of the school code or Constitution expressly prohibits a thing from being done, the school board would not be prevented from undertaking some action. The Florida School Code was enacted pursuant to s 1 of Art. IX, State Const., which requires that `[a]dequate provision shall be made by law for a uniform system of free public schools . . . .' See, s 228.04, F.S., which provides: `As required by s. 1, Art. IX of the Constitution, this state system of public education shall include the uniform system of free public schools as established and which shall be liberally maintained.' See also, ss 228.01, 228.02, and 228.03, F.S. In construing statutes which relate to the same or to a closely related subject, they must be read in pari materia and compared with each other; the courts will examine the entire statutory scheme to determine legislative intent. See, e.g., Ferguson v. State, 377 So.2d 709 (Fla. 1979); Alachua County v. Powers, 351 So.2d 32 (Fla. 1977); State ex rel. Gaines Construction Co. v. Pearson, 154 So.2d 833 (Fla. 1963). Further, the courts must avoid, if possible, a construction of a statute which will place it in conflict with other apparently effective statutes covering the same field. See, e.g., Howarth v. City of Deland, 158 So. 294 (Fla. 1934); Curry v. Lehman,47 So. 18 (Fla. 1908). In light of the constitutional requirement that `[a]dequate provision shall be made by law for a uniform system of free public schools' and these statutory provisions, this office cannot and is without power to declare that the amendment of s 230.03(2), F.S., by s 7 of Ch. 83-324, Laws of Florida, supersedes or operates to impliedly repeal or modify the provisions of the Florida School Code relating to the power, authority, and responsibility of the district school boards. The repeal or modification of one statute by another by implication is not favored and will not be deemed to have been intended unless the intention is clearly manifested. See, e.g., Town of Indian River Shores v. Richey, 348 So.2d 1 (Fla. 1977); Sweet v. Josephson,173 So.2d 444 (Fla. 1965); Dade County v. City of Miami, 82 So. 354
(Fla. 1919).
The type of `home-rule' power granted to district school boards by the enactment of s 7 of Ch. 83-324, Laws of Florida, can be analogized to the grant of home rule powers to municipalities for purposes of analyzing the powers, duties and functions of district school boards. The Municipal Home Rule Powers Act, Ch. 166, F.S., granted to municipalities broad home rule powers. For example, s166.021(1), F.S., of the act, among other things, provides that municipalities `may exercise any power for municipal purposes except when expressly prohibited by law.' Compare this language to that of s 7 of Ch. 83-324 vesting in school boards the authority to `exercise any power except as expressly prohibited by the State Constitution or general law.' Thus, the rules of law applicable to the exercise of municipal home rule powers may well be analogous and applicable to the exercise of a power by a district school board pursuant to s 230.03(2), as amended. The problem of direct conflict between a statutory provision and a local municipal enactment has only recently been directly discussed by the Florida courts. In City of Miami v. Rocio Corp., 404 So.2d 1066, 1069,1070 (3 D.C.A. Fla., 1981), pet. for rev. den., 408 So.2d 1092
(Fla. 1982), the court stated that `[o]ne impediment to constitutionally derived legislative powers of municipalities occurs when the municipality enacts ordinances which conflict with state law. . . . Municipal ordinances are inferior to state law and must fail when conflict arises.' The court went on to reason that `[a]lthough legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation enacted by municipalities may not conflict with state law.' See also, Campbell v. Monroe County,426 So.2d 1158 (3 D.C.A. Fla., 1983); Edwards v. State, 422 So.2d 84 (2 D.C.A. Fla., 1982); State v. Redner, 425 So.2d 174 (2 D.C.A. Fla., 1983). While it is obviously impossible to definitely predict how the Florida courts will deal with this issue, I am inclined to the view that, pending legislative or judicial clarification, a district school board may exercise any power for school purposes except as expressly prohibited by the State Constitution or general law; however, in the case of a direct conflict between a state statute and a rule, policy or other form of legislative action taken by a district school board, the state statute would prevail.
Further, you inquire as to the effect of Ch. 83-324, supra, on the rules and regulations of the State Board of Education. Section 2 of Art. IX, State Const., provides: `The governor and the members of the cabinet shall constitute a state board of education, which shall be a body corporate and have such supervision of the systemof public education as is provided by law.' (e.s.) Pursuant to this constitutional provision, the Legislature has enacted a number of laws relating to the State Board of Education and its rule-making powers. Section 229.011, F.S., provides that `[p]ublic education is basically a function and responsibility of the state. The responsibility for establishing such minimum standards and regulations as shall tend to assure efficient operation of all schools and adequate educational opportunities for all children isretained by the state.' (e.s.) Subsection (1) of s 229.053, F.S. (1982 Supp.), in pertinent part states: `The State Board of Education is the chief policymaking and coordinating body of public education in Florida. It has the general powers to determine, adopt, or prescribe such policies, rules, regulations, or standards as are required by law or as it may find necessary for the improvement of the state system of public education.' Section 229.041, F.S., provides: `All rules and regulations and minimum standards adopted or prescribed by the state board [of education] in carrying out the provisions of the school code shall, if not in conflict therewith, have the full force and effect of law.' See also, s 229.76, F.S., which provides that the Department of Education shall operate under the direction and control of the state board and shall assist in carrying out the policies, procedures, and duties authorized by law or by the state board or found necessary by it to attain the purposes and objectives of the School Code. The district school boards' legal relationship with the State Board of Education and their position in the structure of the state system of education is set forth in subsection (1) of s 230.03, F.S., as amended by Ch. 83-324, Laws of Florida, which in relevant part, provides: `The district school system shall be considered as a part of the state system of public education. All actions of district school officials shall be consistent and in harmony with state laws and with rules and minimum standards of the state board [of education].' Section 230.01, F.S., requires the actual operation and administration of all schools within the districts to be in conformity with regulations and minimum standards prescribed by the state. Seealso, ss 230.22(5), 230.23(14), and s 230.33(15), F.S. In light of the constitutional grant of power to the State Board of Education of such supervision of the system of public education, including the school districts, as is provided by law, and the implementing statutory provisions, I am unable to conclude, indeed I have no power to determine, that s 230.03(2), F.S., as amended by Ch. 83-324, Laws of Florida, operates to supersede all other laws relating to or vesting powers in the State Board of Education. Thus, it would appear that while the district school boards have been granted greater local control over the public schools in their respective districts, such boards have a continuing responsibility to act consistently and in harmony with applicable rules and minimum standards of the state board, and further to require that all laws relating to the school systems and rules and regulations of the state board are properly enforced.
The legislative use of the phrase, `may exercise any power except as expressly prohibited by the State Constitution or general law,' (e.s.) may raise issues involving situations in which an implied
constitutional prohibition is present. It is questionable whether the Legislature possesses the power to legislate an `expressly prohibited' requirement into the Constitution — although the courts have not yet set forth the constituent elements or factors which make up an `express prohibition.' Cf., Edwards v. State, supra, at 85; Pierce v. Division of Retirement, supra, at 672. The courts have stated, however, that implied limitations contained in the Constitution are a part of the organic law and that implied prohibitions are as effective as those specifically expressed. See, e.g., Martin County v. Hansen, 149 So. 616 (Fla. 1933); Church v. Lee, 136 So. 242 (Fla. 1931); Jackson v. Jackson,107 So. 255 (Fla. 1925). Concerning implied statutory prohibitions, this office is constrained to interpret the law using the plain meaning of the words. The amendment provides that the statutory prohibition must be `express.' See, definition of `expressly,' supra. Therefore, the Legislature has determined the conditions or the limitations on the exercise of the school board's authority.
Where the state statute distinctly specifies the method, manner, or procedure in which a district school board is required to act in the exercise of a legislative power or administrative policy, such legislative direction would prevail over a conflicting method or procedure adopted by a district school board. Thus, it is my opinion, unless legislatively or judicially clarified to the contrary, that where a statute or rule or regulation of the State Board of Education does not distinctly specify the required mode or manner in which a school board may properly exercise a power, the school board may use its reasonable discretion to determine the manner in which such power shall be exercised.
Finally, you have specifically asked what is the effective date of Ch. 83-324, Laws of Florida. Section 9 of Art. III, State Const., in pertinent part, provides: `Each law shall take effect on the sixtieth day after adjournment sine die of the session of the legislature in which enacted or as otherwise provided therein.' As you point out, Ch. 83-324 did not become law until after the effective date expressly prescribed in that act. In the case of In re Advisory Opinion to Governor, 374 So.2d 959 at 967 (Fla. 1979), the Florida Supreme Court, adopting the reasoning of earlier opinions of this office, determined that where an enacted bill contains an effective date which is earlier than the date when the bill became law, `the appropriate date in these circumstances (and in the absence of an expressed declaration of retroactivity) is the sixtieth day after adjournment.' The basis for the conclusion is that the effective date provided in the bill is inoperative unless the bill becomes a law on or before that date. See also, AGO's 71-262, 67-49. The 1983 Special Session `B' of the Florida Legislature, during which Ch. 83-324 was enacted, adjourned sinedie on June 24, 1983. Therefore, it is my opinion that Ch. 83-324 (Senate Bill No. 6-B), Laws of Florida, takes effect on the 60th day after June 24, 1983, which was August 23, 1983.
In summary, it is my opinion that, pending legislative or judicial clarification, a district school board acting pursuant to s 230.03(2), F.S., as amended by s 7 of Ch. 83-324, Laws of Florida, unless expressly prohibited by the State Constitution or general law, may exercise any power for school purposes in the operation, control, and supervision of the free public schools in its district; however, in the case of a direct conflict between a state statute and a rule, policy or other form of legislative action taken by a district school board, the state statute would prevail. While the district school boards have been granted greater local control, such boards have a continuing responsibility to act consistently and in harmony with applicable rules and minimum standards of the state board, and further, to required that all laws relating to the school system and rules and regulations of the state board are properly enforced. A state statute which distinctly specifies the method, manner, or procedure in which a district school board is required to act prevails over a conflicting method or procedure adopted by a district school board. Finally, Ch. 83-324, Laws of Florida, amending s 230.03(2), F.S., took effect on August 23, 1983.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General