Mr. Douglas J. Sale City Attorney City of Panama City Beach Magnolia Avenue at Third Court Post Office Drawer 1579 Panama City, Florida 32402 Attention: Mr. William A. Lewis Assistant City Attorney
Dear Mr. Sale:
This is in response to your request for an opinion on substantially the following questions:
 1. IS A MUNICIPAL POLICE DEPARTMENT REQUIRED TO CONDUCT INVESTIGATIONS INTO THOSE TRAFFIC ACCIDENTS WHICH OCCUR WITHIN THE MUNICIPAL LIMITS?
 2. IF A MUNICIPAL POLICE DEPARTMENT IS IN FACT REQUIRED TO CONDUCT SUCH INVESTIGATIONS, MAY IT REFUSE TO FURNISH ACCIDENT REPORTS TO THOSE INVOLVED IN THE ACCIDENT OR THEIR INSURANCE COMPANIES, SINCE THE DEPARTMENT OF HIGHWAY SAFETY 
MOTOR VEHICLES IS THE CENTRAL DEPOSITORY FOR SUCH RECORDS?
 3. IN THE EVENT THAT THE MUNICIPAL DEPARTMENT IS REQUIRED TO FURNISH SUCH REPORTS, MAY THE FEES CHARGED EXCEED THE ACTUAL COSTS FOR COPIES?
QUESTION ONE
In inquiring about the responsibility of municipal law enforcement officers to investigate traffic accidents occurring within municipal limits, you do not specify the types of vehicular accidents involved or where such accidents occur. See, in this regard, AGO 75-104 (no authority to enforce the provisions of Ch.316, F.S., on private roads where the general public does not have the right to travel). Therefore, the comments in this opinion with regard to the duties and responsibilities of municipal police officers to investigate traffic accidents must be general in nature.
Chapter 316, F.S., the Uniform Traffic Control Law, was enacted in order to make uniform traffic laws applicable throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities. Section 316.002, F.S. In the preamble to Ch. 71-135, Laws of Florida, creating Ch. 316, F.S., the Legislature, recognizing that the movement of traffic was controlled by a "hodgepodge of ordinances which vary as to language and penalty" and which had caused an inconvenience and hazard to travelers, consolidated the existing state traffic laws contained in Ch. 317, F.S. 1969, the traffic ordinances contained in Ch. 186, F.S. 1969, and the suggested laws and ordinances contained in the Uniform Vehicle Code and the Model Traffic Ordinances into one uniform law applicable throughout the state and to all its municipalities and political subdivisions.
While municipalities may control certain traffic movement or parking in their jurisdiction, s. 316.002, F.S., makes it clear that any such authority is "supplemental to the other laws or ordinances of this chapter and not in conflict therewith." This section goes on to state that it is unlawful for any local authority, which includes municipalities, to pass or to attempt to enforce any ordinance in conflict with the provisions of Ch. 316. See also, s. 316.007, F.S., which states that the provisions of Ch. 316 are to be applicable and uniform throughout the state and in all political subdivisions and municipalities therein and that "no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized." (e.s.) Cf., s. 166.021, F.S., which operates to prohibit a municipality from exercising any power for municipal purposes or enacting any municipal legislation when expressly prohibited by law or when the subject matter is expressly preempted to the state by general law. And see, City of Miami Beach v. Rocio Corporation,404 So.2d 1066 (3 D.C.A. Fla., 1981), pet. for rev. den.,408 So.2d 1092 (Fla. 1981) (municipal ordinances are inferior to state law and must fail when conflict arises).
The aforementioned provisions of ss. 316.002 and 316.007, F.S., operate to prohibit any conflicting local legislation on traffic control or the enforcement thereof under the police power by a municipality, except as may be expressly authorized by the Uniform Traffic Control Law. See, s. 316.008(1)(k), F.S., which expressly permits local authorities to require written accident reports. To the extent Ch. 316 places any mandatory duties and responsibilities upon local law enforcement authorities, such legal duty is the law of the state and any local laws or legislation to the extent of a conflict are expressly precluded.
Section 316.006(2), F.S., provides that chartered municipalities shall have original jurisdiction over all streets and highways located within their boundaries. In recognition of this original jurisdiction, the provisions of Ch. 316, F.S., as pertinent to the instant inquiry, are directed towards municipal police officers. See, s. 316.640(3)(a), F.S., providing that the police department of each chartered municipality shall enforce the traffic laws of this state on all the streets and highways, thereof and elsewhere throughout the municipality wherever the public has a right to travel. And see, s. 316.640(3)(b), F.S., authorizing such police departments to employ a traffic accident investigation officer; and s. 316.645, F.S., authorizing a police officer who makes an investigation at the scene of a traffic accident to arrest the driver of a vehicle involved in the accident when based upon personal investigation, the officer has reasonable and probable grounds to believe the person has committed an offense under Chs. 316 or 322, F.S., in connection with the accident. Section316.065(1), F.S., for example, in relevant part, provides: "The driver of a vehicle involved in an accident resulting in injury to or death of any persons or property damage shall immediately by the quickest means of communication give notice of the accident to the local police department, if such accident occurs within a municipality[.]" See also, s. 316.062(1), F.S., which places a duty upon the driver of a vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property to give his name, address, and registration number of the vehicle he is driving "and, upon request, exhibit such license or permit to any police officer at the scene of the accident or who is investigating the accident. . . ." *2287 Subsection (2) of s. 316.062, F.S., places a duty upon such driver to, in the event no person specified in subsection (1) is present to receive the information and no police officer is present, "forthwith report the accident to the nearest office of a duly authorized police authority and submit thereto the information specified in subsection (1)." See also, s.316.063, F.S., imposing similar duties upon the driver of a motor vehicle damaging an unattended vehicle or other property.
*2288 Section 316.066, F.S., addresses the question of whether a written report is required to be submitted to the Department of Highway Safety and Motor Vehicles. Subsections (1) and (2) set forth the duty of the driver of the vehicle involved in an accident to submit written reports to the department. Subsection (3) sets forth the duty of the law enforcement officer who in the regular course of duty investigates a motor vehicle accident to submit a written report to the department:
 (3)(a) Every law enforcement officer who in the regular course of duty investigates a motor vehicle accident:
 1. Which accident resulted in death or personal injury shall, within 24 hours after completing the investigation, forward a written report of the accident to the department.
 2. Which accident involved a violation of s. 316.027(2), s. 316.061(1), s. 316.193, or s. 316.1931 shall, within 24 hours after completing the investigation, forward a written report of the accident to the department.
 3. In which accident a vehicle was rendered inoperative to a degree which required a wrecker to remove it from traffic may, within 24 hours after completing the investigation, forward a written report of the accident to the department when such action is appropriate, in the officer's discretion.
 However, in every case in which a written report is not required, the law enforcement officer shall provide each party involved in the accident a short-form report as prescribed by the department, which report must include, but is not limited to: the date, time, and location of the accident; a description of the vehicles involved; the names and addresses of the parties involved; the names and addresses of witnesses; the name, badge number, and law enforcement agency of the officer investigating the accident; and the names of the insurance companies for the respective parties involved in the accident.
 (b) In the case of a county which has a central traffic records system for the purpose of tabulating and analyzing countywide traffic accident reports, the law enforcement agency shall submit a copy of the written report of the accident within the time limit prescribed in paragraph (a) to the central traffic records section of such county.
See, s. 316.068, F.S., which vests the Department of Highway Safety and Motor Vehicles with the responsibility to "prepare and, upon request, supply to police departments, sheriffs, and other appropriate agencies or individuals forms for written accident reports as required" by Ch. 316.
Thus, Ch. 316, F.S., does not directly and expressly impose upon the various law enforcement agencies the duty and responsibility, in the first instance, to investigate traffic accidents occurring in their respective jurisdiction. Such duty flows instead from the law enforcement agency's general governmental and law enforcement responsibility, which is consistent with and a necessary prerequisite in order to comply with the additional reporting requirements imposed by the Legislature upon law enforcement officers under Ch. 316. See, e.g., 316.066(3)(a), supra, imposing written report requirements upon "[e]very law enforcement officer who in the regular course of duty investigates a motor vehicle accident." And see, s. 316.065(1), F.S., requiring the driver of a motor vehicle involved in an accident resulting in injury to or death or property damage to "immediately by the quickest means of communication give notice of the accident to the local police department"; and ss. 316.062 and 316.063, F.S., requiring the driver to supply the investigating police officer with certain types of information. See also, 316.640(3)(a), F.S., supra. A distinction must be made, however, with regard to accidents which occur on roads, streets, and highways within the municipality where the public has a right to travel and accidents which occur on private property. See, e.g., AGO 75-104 which concluded that in areas where the public and local authorities are not invited to travel, local authorities do not have the right or obligation to investigate and write accident reports. That opinion did note, however, that traffic-related accidents on private property could involve other laws which are within the jurisdiction of local authorities to investigate and enforce. See also, AGO's 75-123, 83-84.
While no provision of Ch. 316, F.S., expressly requires municipal police officers to investigate each and every traffic accident that occurs within the city limits, to the extent that s. 316.066, F.S., places certain mandatory reporting requirements on the police officer, an investigation would appear to be necessary in order to comply with the statute. In AGO 72-383, this office in construing the provisions of ss. 316.065 and 316.066, F.S. 1972, as they were then written, concluded that when notice of a vehicular accident has been given to the appropriate police authority, that police authority is not only authorized to investigate the accident, but is under a duty to do so. Since 1972, the statute has been amended to more specifically set forth a police officer's reporting requirements for certain traffic accidents. The current version of the statute contains mandatory officer reporting requirements for certain types of traffic accidents, while vesting in said officer discretion for reporting other less serious types of accidents. First, any accident which resulted in death or personal injury must be reported, and therefore, investigated. Second, any accident which involved a violation of ss. 316.027(2), 316.061(1), 316.193, or 316.1931, F.S., must be investigated and reported. Accidents which require a wrecker to remove the vehicle from traffic may, in the officer's discretion, be reported to the Department of Highway Safety and Motor Vehicles. In all other accidents which do not require an officer's written report, the law enforcement officer, who, in his discretion, has decided not to report the accident to the department, must provide each party involved in the accident a short-form report, as prescribed by the department, containing the information set forth in s. 316.066(3)(a), F.S.
QUESTION TWO
Your second question is controlled by the provisions of the Public Records Law, Ch. 119, F.S. As set forth above, in those cases in which a written report is not required to be submitted to the Department of Highway Safety and Motor Vehicles, the law enforcement officer is under a mandatory duty to supply each party involved in an accident with a short-form report as prescribed by the department, which report must include, but is not limited to, the information set forth in s. 316.066(3)(a), F.S. In those instances in which the police officer is required to submit a written report to the Department of Highway Safety and Motor Vehicles, it is assumed for purposes of this inquiry that a copy of report is maintained by the municipal police department.
Section 119.011(1), F.S., defines "public records" as "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." In Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633, 640 (Fla. 1980), the Florida Supreme Court construed the above definition of "public records" to include "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." Since a municipal police department is an "agency" as defined in s.119.011(2), F.S., accident reports made or received by such police department pursuant to law or ordinance or in connection with the transaction of official business is a public record open for inspection or copying unless statutorily exempted from disclosure or made confidential. I am not aware of any provision of general or special law making the accident report prepared by municipal police officers confidential or exempt from the disclosure provisions of s. 119.07(1), F.S., nor has any such provision been brought to the attention of this office. Compare, s. 316.066(4), F.S., which makes accident reports made by persons involved in a traffic accident confidential as set forth therein. See, AGO's 77-49, 72-158 and 56-286 concluding that although accident reports made by persons involved in accidents are confidential, an accident report by the investigating officer was a public record subject to inspection and examination. Cf., AGO 82-65 considering a similar provision relating to boating accident reports.
As to whether the police department may refuse to furnish a copy of the accident report to those involved in the accident or their insurance companies, s. 119.07(1)(a), F.S., in pertinent part, provides:
 Every person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee. The custodian shall furnish a copy or a certified copy of the record upon payment of the fee prescribed by law or, if a fee is not prescribed by law, upon payment of the actual cost of duplication of the record.
The requirements of this statute are clear and no resort to rules of statutory construction is necessary where the language is clear and unambiguous. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983); Clark v. Kreidt,199 So. 333 (Fla. 1940). Cf., AGO 77-49, supra, concluding that notwithstanding the confidentiality provisions of s. 316.066(4), F.S., a driver or other participant in the accident may inspect and copy his own accident report; AGO 82-65. Neither this statute nor any other provision of law of which I am aware makes an exception from the requirements of the Public Record Law merely because the record in question may also be maintained by another public agency.
Accordingly, I am of the opinion that accident reports prepared by municipal police officers as provided in Ch. 316, F.S., are public records subject to inspection and copying under the Public Records Law. The fact that the record in question is also in the custody of and maintained by another public agency does not, in my opinion, relieve the municipal police department from its duty and responsibility to permit inspection and copying of records in its custody.
QUESTION THREE
Section 119.07(1)(a), F.S., expressly provides that the custodian of a public record shall furnish a copy of the record "upon payment of the fee prescribed by law or, if a fee is not prescribed by law, upon payment of the actual cost of duplication of the record." That statute goes on to provide that "[t]he phrase `actual cost of duplication' means the cost of the material and supplies used to duplicate the record, but it does not include the labor cost or overhead cost associated with such duplication. . . ."
My examination of the provisions of Ch. 316, F.S., failed to reveal a statute prescribing the fees for a copy of an accident report. Section 119.07(1)(b), F.S., provides that if the nature or volume of public records requested to be inspected, examined, or copied is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by personnel of the agency involved, or both, the agency may charge, in addition to the actual cost of duplication, a special service charge based upon the cost incurred for such extensive use of information technology resources or the labor cost of the personnel providing the service. However, as this office stated in AGO 84-81, such charge may only be imposed when the nature or volume of such records necessitates extensive clerical or supervisory assistance and may not be routinely imposed or justified merely because a record contains exempted materials. See also, AGO 85-19. This office has not been presented with any evidence indicating that extensive clerical or supervisory assistance or extensive use of information technology resources is required in furnishing copies of such accident reports. Therefore, pursuant to the provisions of s. 119.07(1), F.S., the fee which may be lawfully imposed for furnishing copies of an accident report is the actual cost of duplication.
In summary, I am therefore of the opinion that:
 1. To the extent that s. 316.066, F.S., places mandatory reporting requirements upon municipal police officers for certain types of traffic accidents enumerated therein, such police officer is required to conduct an investigation of such accidents as part of his mandatory duties and responsibilities.
 2. Municipal police departments are not authorized to refuse to furnish copies of required accident reports which are public records pursuant to s. 119.07, F.S., if no exemption therefrom is applicable for such record.
 3. While s. 119.07(1)(b), F.S., authorizes the imposition of a special service charge for the inspection or copying of public records when extensive use of information technology or extensive clerical or supervisory assistance is required, such change may not be routinely imposed. In the absence of such extensive use of its information technology resources or of its clerical or supervisory assistance, a municipal police department may charge only the actual costs of duplication for furnishing copies of accident reports.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General